UNITED STATES of America

v.

Antone R. WHITE, Eric A. Hicks, Dan
R. Hutchinson, Ronald R. Hughes
and Derrick J. Ballard.

Crim. No. 93–0097 (HHG).

United States District Court,
District of Columbia.

Oct. 27, 1993.

Michael Volkov, Steven Roman, Asst. U.S. Attys., Washington, DC, for Government.

R. Kenneth Mundy, Washington, DC, for Antone R. White.

Joseph Gigliotti, Washington, DC, for Eric A. Hicks.

John A. Briley, Jr., Washington, DC, for Dan R. Hutchinson, Jr.

Diane S. Lepley, Washington, DC, for Ronald R. Hughes.

Mark Rochon, Washington, DC, for Derrick J. Ballard.

## OPINION

HAROLD H. GREENE, District Judge.

This case involves the prosecution of five defendants alleged to be members of an organization known as the First Street Crew. The defendants are accused in a twenty-six count indictment of conspiracy to distribute narcotics, operation of a continuing criminal enterprise, violations of RICO and other criminal violations. Two of the defendants have been indicted for the homicide of Arvell Williams, a police informant who worked with the Metropolitan Police Department in its investigation of the First Street Crew. The Court has received and considered numerous pretrial motions, most of which have been ruled upon from the bench or in a previously issued Memorandum. The instant Opinion, however, deals with a relatively novel legal

and procedural issue raised by the government. Therefore, the Court has determined that it merits somewhat more extended treatment.

As set forth in its motion, the government seeks to introduce at trial a number of out-of-court statements made by Arvell Williams prior to his death.[1] The issue before the Court is whether any of Williams's statements may be admitted at trial notwithstanding the obvious fact that he will be unable to take the stand and therefore cannot be cross-examined. The government contends that the defendants have procured the absence of Mr. Williams from these proceedings and that they have therefore waived any confrontation rights and hearsay objections that might otherwise be available. Not surprisingly, the defendants dispute this assertion.[2]

## I

### Waiver of Confrontation Rights and Hearsay Objections

■ The Supreme Court has long recognized that a defendant's right of confrontation may be waived not only by consent but also by misconduct. *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). The Supreme Court has specifically indicated that a defendant cannot assert his Confrontation Clause rights if a witness's absence is procured by the defendant himself. *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) (absence procured through defendant's refusal to tell U.S. Marshal where witness, who lived with defendant, could be found for service of subpoena). This rule has been applied by the lower courts in a number of factual situations.[3]

The rationale underlying this rule of law is, quite logically, that the law should not allow a person to take advantage of his own wrong. *See United States v. Mastrangelo,* 693 F.2d 269, 272 (2d Cir.1982). Put another way, "[t]he Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." *United States v. Carlson, supra,* 547 F.2d at 1359 (citing *Diaz v. United States,* 223 U.S. 442, 458, 32 S.Ct. 250, 255, 56 L.Ed. 500 (1912) and *Reynolds v. United States, supra,* 98 U.S. at 159). The *Carlson* court went on to state that:

> Nor should the law permit an accused to subvert a criminal prosecution by causing witnesses not to testify at trial who have, at a pretrial stage, disclosed information which is inculpatory as to the accused. To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause.

*Carlson, supra,* 547 F.2d at 1359. Similar conclusions, which the Court believes cannot reasonably be questioned, have been reached by a number of other courts.[4] "Any other

---

1. The government contends that Williams volunteered in August, 1992, to assist police in their investigation of the First Street Crew. Williams and an undercover police officer allegedly purchased crack cocaine from indicted and unindicted members of the First Street Crew on a number of occasions between August 14 and October 2, 1992. In addition, Williams provided other information to the police with respect to the activities of the First Street Crew and its members. Arvell Williams was murdered on October 6, 1992.

2. Although only defendants White and Hughes have been indicted for the murder of Arvell Williams, as discussed below, the government has attempted to present evidence linking the other defendants, for purposes of this motion and in varying degrees, to the murder.

3. *See, e.g., United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992) (silence procured through threats against potential witness); *United States v. Potamitis,* 739 F.2d 784, 788 (2d Cir.) (silence

procured through threats), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984); *Steele v. Taylor,* 684 F.2d 1193, 1199 (6th Cir.1982) (silence procured because witness "under control" of defendants), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983); *United States v. Thevis,* 665 F.2d 616, 627 (5th Cir.) (silence procured through murder of witness), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Balano,* 618 F.2d 624, 629 (10th Cir.1979) (silence procured through various threats), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Carlson,* 547 F.2d 1346, 1352–53 (8th Cir.1976) (silence procured through threats of violence), *cert. denied,* 431 U.S. 914 (1977).

4. *See, e.g., Steele v. Taylor, supra,* 684 F.2d at 1202 (rule based on "public policy protecting the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of adverse witness."); *United States v. Thevis, supra,* 665 F.2d at 630 ("The law

result would mock the very system of justice the confrontation clause was designed to protect." *United States v. Mastrangelo, supra,* 693 F.2d at 273.

Moreover, most courts have agreed that a waiver of confrontation rights under these circumstances also waives any hearsay objection to the admissibility of the evidence. *See United States v. Aguiar, supra,* 975 F.2d at 47 ("A defendant who procures a witness's absence waives the right of confrontation for all purposes with regard to that witness, not just to the admission of sworn hearsay statements."); *United States v. Thevis, supra,* 665 F.2d at 630 ("waiver of [defendant's] right to confrontation in these circumstances also constituted a waiver of any hearsay objection"). *Compare United States v. Carlson, supra,* 547 F.2d at 1360 n. 14 ("We need not go so far in this case as to hold that, when an accused threatens a potential witness into not testifying at trial, all extrajudicial statements of that witness, however unreliable or unbelievable, may be admitted in evidence at trial.").

In *Steele v. Taylor, supra,* the Sixth Circuit explored at length the issue of whether a waiver of confrontation rights also waives any otherwise available hearsay objections. For many of the same public policy reasons set forth in the preceding paragraphs, the *Steele* court concluded that the hearsay rule must be substantially relaxed when the defendant has caused a witness's unavailability. 684 F.2d at 1201. The court in that case gathered and summarized a substantial history of both English and American cases supporting the proposition that a defendant who procures the absence of a witness waives his right to object to extra-judicial statements admitted at trial. *Id.* & n. 10. This Court finds compelling the rationale set forth in *Steele* and each of the other cases discussed above. Therefore, the Court agrees that if any defendant was responsible for the absence of Arvell Williams from the trial in this case, that defendant will be deemed to have waived his confrontation rights and hearsay objections with respect to statements made by Arvell Williams.

**II**

**Procedures For Determining Waiver of Confrontation Rights**

Based upon the foregoing statement of the law, the Court determined that it would be necessary to conduct a two-stage preliminary hearing in order to make determinations with respect to which defendants, if any, were responsible for the absence of Arvell Williams and which statements made by Mr. Williams would be admitted at trial.

First, the government was required to present evidence in support of its contention that any or all of the defendants were instrumental in procuring the absence of Arvell Williams from these proceedings. *See United States v. Mastrangelo, supra,* 693 F.2d at 273. Second, the government was required to identify specifically those statements it intended to introduce at trial, and the defendants were given an opportunity to cross-examine those police officers to whom Mr. Williams made the statements with respect to the reliability of the statements and the circumstances under which they were made and recorded.

**A.** *Procurement of Witness's Unavailability*

Under the procedures outlined by the Court, the government was first required to present evidence with respect to whether any or all of the defendants were responsible for the absence of Arvell Williams from these proceedings. Prior to beginning this phase, the Court advised the parties of the factors it would consider in making this threshold determination. The instructions included (1) the evidentiary procedures for the hearing, (2) the level of participation or knowledge of a particular defendant required for out-of-court statements to be admitted against him, and (3) the government's burden of proof.

**1.** *Evidentiary Procedure*

Because of serious witness security concerns, evidence with respect to the cause of the unavailability of Arvell Williams was presented exclusively through testimony provid-

---

simply cannot countenance a defendant deriving benefit from murdering the chief witness against him."); *United States v. Balano, supra,* 618 F.2d at 629 (citing language of *Carlson* ).

ed. by Detective Joseph Schwartz, a homicide detective with the Metropolitan Police Department. Detective Schwartz testified with respect to a number of witness statements and identifications gathered in connection with the investigation of the Williams murder. Throughout this testimony, the witnesses were referred to only by previously arranged designations such as ·Witness # 1, Witness # 2, etc.[5] The government was also required to bring out on direct examination any prior convictions of the unidentified witnesses and any "deals" such witnesses may have made with the government to allow the Court to consider the credibility of the absent witnesses and any bias the absent witnesses might harbor in favor of the government.

· The defendants protested with respect to this procedure based largely upon their assertion that it was essential for the Court to view the demeanor of each witness in order to make an accurate assessment of their credibility. The Court noted, however, that other courts have repeatedly held that hearsay testimony may be accepted in hearings held for the instant purpose. *See, e.g., United States v. Aguiar, supra,* 975 F.2d at 47 (evidence of reason for unavailability presented through prior unsworn statements made by unavailable witness); *United States v. Mastrangelo, supra,* 693 F.2d at 273 (evidence of reason for unavailability to be presented under Fed.R.Evid. 104(a), which allows hearsay evidence); *United States v. Balano, supra,* 618 F.2d at 628–29 (evidence of reason for unavailability presented through government agents; often the only evidence

available); *United States v. Carlson, supra,* 547 F.2d at 1353 (evidence of reason for unavailability presented through testimony of DEA Agents).

■ Obviously, once the Court determines that hearsay testimony will be allowed, the defendants' concern regarding the Court's inability to view the demeanor of the out-of-court declarant is essentially moot. Inherent in the concept of hearsay testimony is the fact that the fact-finder has no opportunity to observe the demeanor of the declarant. *See United States v. King,* 713 F.2d 627, 632 n. 8 (11th Cir.1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984); *In re American Export Lines, Inc.,* 73 F.R.D. 454, 459 (S.D.N.Y.1977). Moreover, the Court found no compelling reason to require disclosure of the names of the absent witnesses given the requirement that the government disclose the criminal record and any agreements such unidentified witnesses had made with the government—especially in light of the security concerns previously mentioned. The Court would have gained no insight from such a disclosure and the defendants were not entitled to the information under the discovery rules. Finally, the defendants were each given ample opportunity to cross-examine Detective Schwartz regarding the statements made to him by the absent witnesses.[6]

### 2. *Participation Requirement*

■ The next bone of contention addressed at the hearing was the question against whom statements made by Arvell Williams could be used. The government

---

**5.** Prior to the hearing, the government provided the Court with a sealed proffer setting forth a number of serious threats that have been made against certain of these witnesses as well as other evidence indicating potential danger to witnesses who will testify at the trial. After reviewing this proffer, the Court was convinced that these threats were of a genuine and significant nature and that appropriate precautions were necessary to protect such witnesses. Although the government intends to call each of these witnesses at trial, and will thus eventually be forced to disclose their identities, the government expressed what appeared to be well-founded concerns with disclosing their identities at this preliminary stage. Moreover, the Court also took notice that the government contends Arvell Williams was

killed precisely because he was cooperating with the government.

**6.** The Court stressed prior to and during the hearing, and does so again here, that the defendants' rights to confront these witnesses at trial have been fully preserved. The instant pre-trial hearing procedure is not designed to determine the ultimate guilt or innocence of any defendant with respect to the homicide or any of the other alleged crimes. It is merely designed to determine the question of whether the out-of-court statements of Arvell Williams will be allowed as evidence against one or more of the defendants. *See* Fed.R.Evid. 104(a) (court not bound by rules of evidence in deciding preliminary questions of admissibility).

appeared initially to take an expansive view on this issue, relying largely upon the instructions to the District Court on remand in *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir.1982). In that case, the Second Circuit instructed that

> If the District Court finds that Mastrangelo was in fact involved in the death of [the unavailable witness] through knowledge, complicity, planning or in any other way, it must hold his objections to the use of [the unavailable witness's] testimony waived. Bare knowledge of a plot to kill [the unavailable witness] and a failure to give warning to the appropriate authorities is sufficient to constitute a waiver.

*Id.* at 273.

With all due respect to the *Mastrangelo* Court, this Court does not agree that the government can cast such an extensive net. Mere failure to prevent the murder, or mere participation in the alleged drug conspiracy at the heart of this case, must surely be insufficient to constitute a waiver of a defendant's constitutional confrontation rights. The Court believes a ruling to that effect would provide too little protection for so important a right. Therefore, in determining whether any out-of-court statement made by Arvell Williams may be used against any particular defendant in this case, the Court has ruled that it will require the government to show that the particular defendant participated in some manner in the planning or execution of the murder of Arvell Williams. *See Olson v. Green,* 668 F.2d 421, 429–30 (8th Cir.), *cert. denied,* 456 U.S. 1009, 102 S.Ct. 2303, 73 L.Ed.2d 1305 (1982).

### 3. *Burden of Proof*

█ Finally, underlying this entire phase of the preliminary hearing is the issue of the burden of proof the government is required to satisfy to demonstrate which defendants, if any, participated in procuring the absence of Arvell Williams. Because this issue has not previously been decided in this Circuit, and because there is at least some disagreement among the Circuits that have addressed the issue, the Court must determine the appropriate standard.

One defendant contends that the government's burden during the preliminary hearing was one of "beyond a reasonable doubt." Yet the Supreme Court long ago indicated that, despite the constitutional right of confrontation, if the prosecution can provide sufficient proof that a defendant has procured the absence of a witness, the burden may be cast upon the defendant to show that he has not been instrumental in concealing the witness. *Reynolds v. United States, supra.* This Court is convinced this holding demonstrates that the government does not bear the burden of proving beyond a reasonable doubt that a defendant procured the absence of a witness. If such a standard were to be applied, it is difficult to envision a case in which the burden could ever be shifted to the defendant—or what purpose would be served by shifting the burden if proof was already presented beyond a reasonable doubt. Moreover, the Court has found no precedent supporting an argument that such a standard should apply.

The remaining defendants asserts that a "clear and convincing proof" standard should be required. In support of this proposal the defendants cited the Fifth Circuit's decision in *United States v. Thevis, supra,* 665 F.2d at 629. It appears, however, that only the Fifth Circuit has actually adopted this standard.[7]

The government, on the other hand, proposes that the appropriate standard of proof is that adopted by most of the federal courts that have addressed the issue—a preponderance of the evidence. *See, e.g., United States v. Aguiar, supra,* 975 F.2d at 47; *United States v. Mastrangelo, supra,* 693 F.2d at 273; *Steele v. Taylor, supra,* 684 F.2d at 1202–03; *United States v. Balano, supra,* 618 F.2d at 629. In addition, the Court notes that a number of state courts have also adopted the preponderance of evidence stan-

---

7. The Court notes in passing that the fact-finding procedures used by the District Court in *Thevis* vary considerably from those used by the other courts in the cases discussed in this Opinion, and from those used by this Court in the present case. Instead of holding a preliminary hearing on the issue of waiver, it appears that the District Court in that case merely allowed the government initially to offer at trial its evidence on the murder count and then made a waiver determination before allowing the out-of-court statements to be admitted. *Id.* 665 F.2d at 627.

dard. *See, e.g., State v. Gettings,* 244 Kan. 236, 769 P.2d 25, 29 (1989); *State v. Sheppard,* 197 N.J.Super. 411, 484 A.2d 1330, 1347–1348 (Law Div.1984); *State v. Frambs,* 157 Wis.2d 700, 460 N.W.2d 811, 814 (Wis.Ct. App.1990).

■ Once again, the Court takes particular note of the decision in *Steele v. Taylor, supra.* In that case, the Sixth Circuit adopted the preponderance standard, in part, by noting that the question of admissibility of extra-judicial statements under the co-conspirator exception is equivalent to a ruling on their admissibility under the Confrontation Clause. The court went on to note that it had previously determined that the preponderance of evidence standard should be used to make preliminary findings of fact on the admissibility of statements under that exception. *Id.* at 1202–03. This seems particularly relevant because the District of Columbia Circuit also uses the preponderance of evidence standard when making preliminary findings of fact on the admissibility of extra-judicial statements under the co-conspirator exception. *See United States v. Beckham,* 968 F.2d 47 (D.C.Cir.1992) (government need only prove by preponderance of evidence that conspiracy existed between defendant and declarant and that statement was made in furtherance of conspiracy).

Based upon the foregoing, the Court is convinced that the appropriate standard for pre-trial determinations regarding the waiver of confrontation rights is a preponderance of the evidence. The Court is especially cognizant of the need to balance a defendant's confrontation rights against the compelling public interest of ensuring that a defendant does not profit from his own wrongdoing. Under such circumstances, the Court believes that if too stringent a standard of proof is adopted, the potential for a defen-

dant to benefit from such wrongdoing is unacceptably increased.

■ However, as the Court has previously announced from the bench, this determination is essentially irrelevant with respect to all defendants except defendant Ballard. It is the Court's assessment of the evidence presented at the preliminary hearing that the government has carried its burden under either of the potential standards with respect to defendants White and Hughes. On the other hand, the Court found that the government had failed to carry its burden under either standard with respect to defendants Hicks and Hutchinson.[8] With respect to defendant Ballard, the Court concludes that the government has met its burden of proof only because the Court applied the preponderance standard, but that if the clear and convincing standard were applied, that burden would not have been met.

Therefore, for purposes of the trial, defendants White, Hughes and Ballard will each be deemed to have waived their confrontation rights and hearsay objections with respect to the statements made by Arvell Williams.

### B. *Reliability, Relevance and Other Evidentiary Objections*

■ The second phase of the preliminary hearing was held for the purpose of exploring which statements made by Arvell Williams the government actually intends to introduce against defendants White, Hughes and Ballard at trial and whether these statements are reliable.[9] The government presented this evidence through the reports and testimony of two officers of the Metropolitan Police Department, Dale Sutherland and Joseph Abdalla. These officers were the recipients of the information provided by Arvell Williams and are the conduits through which the statements of Arvell Williams will be introduced at trial. On direct examination,

---

**8.** Indeed, the government eventually conceded that neither Hutchinson nor Hicks waived their confrontation rights.

**9.** Most of the statements that the government contends were made by Arvell Williams were summarized in police reports. At the hearing, these reports were marked as exhibits and the government designated the specific statements contained in the exhibits that it intends to intro-

duce. The Court has made clear that any reference to defendants Hutchinson and Hicks, or any reference to the First Street Crew or the Crew must be redacted in order to protect the rights of defendants Hutchinson and Hicks. *See United States v. Smith,* 792 F.2d 441, 442–43 (4th Cir. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).

the officers essentially explained how and when their reports were prepared and adopted as their testimony the statements contained therein.

The defendants were then given an opportunity to cross-examine each officer with respect to (1) the circumstances under which the statements were made to them, (2) the officers' procedures for recording or recalling such statements, (3) the issue whether such statements were based upon the first-hand knowledge of Williams or were related to him from other sources, and (4) other issues bearing on the reliability of the statements made by Williams.

■ The Court believes the foregoing procedures have created a sufficient record on which the Court and the parties may rely as the trial proceeds. However, because the Court is simply unable to evaluate the merit of any and all conceivable evidentiary objections to the admissibility of the statements at this preliminary stage, objections as to relevance, unfair prejudice under Fed.R.Evid. 403, and any other valid evidentiary objections, should be made at the time the statement is actually to be introduced at trial.

■ However, with respect to the "reliability" of the statements, the Court heard argument from all defendants at the conclusion of the hearing regarding which specific statements were allegedly unreliable. The term "reliability," in the context of this hearing, must be distinguished from that term as it is used in the ordinary context of determining reliability for purposes of validating hearsay testimony. As noted above, those defendants found to have participated in procuring the absence of Arvell Williams have waived

their hearsay objections with respect to the testimony that Williams would have presented were he present at the trial. That, however, does not end the inquiry.

■ As explained above, the policy underlying the waiver of confrontation rights is based on the goal of deterring defendants from intentionally procuring the absence of potentially damaging adverse witnesses. Thus, the purpose of finding a waiver is limited to allowing the adverse party to present statements made by the unavailable witness as if the witness were actually able to take the stand. But the purpose of the rule extends no further. The rule is not to be used to punish a defendant by allowing the introduction of all manner of statements from the unavailable witness—even when those statements clearly would not have been admissible had the witness in fact testified. Thus, only statements that would have been admissible had Williams taken the stand may be introduced at trial. *See Steele v. Taylor, supra,* 684 F.2d at 1202 ("A prior statement given by a witness made unavailable by the wrongful conduct of a party is admissible against the party if the statement would have been admissible had the witness testified.").[10]

The effect and purpose of the Court's ruling is, in effect, that the initial layer of hearsay—the fact that the testifying officers are relating statements made to them by Arvell Williams—will be ignored. The testimony will be allowed against defendants White, Hughes and Ballard as if Arvell Williams were indeed on the witness stand.[11] Therefore, Williams's "testimony" cannot contain statements that would have otherwise been objectionable had he in fact taken the stand. Such a rule would clearly go too

10. An argument was made by the defendants at the hearing that the government has "opened the door" to the defense introducing any arguably favorable statement made by Arvell Williams. Except to the extent such a statement is required to place the statements offered by the government into their proper context, *see* Fed.R.Evid. 106, this argument is rejected. The defense is no more entitled to introduce hearsay testimony under the circumstances of this case than it would under any other. Only the defendants waived their confrontation rights and hearsay objections in this case. The government does not waive its hearsay objections by introducing statements made by Williams. Where only one party is

responsible for a witness's absence, hearsay objections are waived only with respect to that party. *See Steele v. Taylor, supra,* 684 F.2d at 1200–01. To allow the defense to introduce favorable hearsay statements of Williams under these circumstances would condone and promote the practice of procuring the absence of witnesses. That result is unacceptable.

11. As noted above, no reference to defendants Hutchinson or Hicks will be allowed. Upon request of either of these defendants, the Court will also give an appropriate limiting instruction.

far. At the appropriate time and based upon the foregoing, the Court will rule on the admissibility of the specific statements of Arvell Williams which the government seeks to introduce.