UNITED STATES COURT OF APPEALS

TENET CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

MICHELLE CHERRY; LADONNA
GIBBS; TERESA PRICE, also known
as Teresa Brown; SONYA PARKER,

      Defendants - Appellees,

  and

JOSHUA PRICE, JR., also known as
Lil' June, also known as June, also
known as June Anderson,

      Defendant.

No. 99-7019

ORDER
Filed June 12, 2000

Before **LUCERO**, **HOLLOWAY** and **MURPHY**, Circuit Judges.

This matter is before the court on appellees' combined petition for
rehearing and rehearing en banc and appellant's response. The panel has voted to
grant rehearing pursuant to Fed. R. App. P. 40(4)(C) for the limited purpose of
amending the majority opinion to eliminate the second sentence of footnote one
on page four of the majority opinion filed on May 2, 2000, currently reading

"Joshua was tried and convicted of the first-degree murder of Lurks." The petition in all other respects is denied. A revised opinion is attached to this order.

The suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35. At the request of Judge William J. Holloway, pursuant to Fed. R. App. P. 35(f), a poll was taken, and following that vote, rehearing en banc is denied pursuant to Fed. R. App. P. 35(a).

Entered for the Court
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

MICHELLE CHERRY; LADONNA
GIBBS; TERESA PRICE, also known
as Teresa Brown; SONYA PARKER,

     Defendants - Appellees,

  and

JOSHUA PRICE, JR., also known as
Lil' June, also known as June, also
known as June Anderson,

     Defendant.

No. 99-7019

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 98-CR-10-S)**

Sean Connelly, U.S. Department of Justice (Bruce Green, United States Attorney,
and Dennis A. Fries, Assistant United States Attorney, with him on the brief),
Denver, Colorado, appearing for the appellant.

Charles Whitman, Tulsa, Oklahoma, appearing for the appellees.

Before **LUCERO**, **HOLLOWAY** and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

This interlocutory appeal from the district court's grant of a motion to suppress out-of-court statements made by a murdered witness requires us to address the difficult question of how the doctrine of waiver by misconduct and Fed. R. Evid. 804(b)(6) apply to defendants who did not themselves directly procure the unavailability of a witness, but allegedly participated in a conspiracy, one of the members of which murdered the witness. Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we conclude that co-conspirators can be deemed to have waived confrontation and hearsay objections as a result of certain actions that are in furtherance, within the scope, and reasonably foreseeable as a necessary or natural consequence of an ongoing conspiracy. We therefore remand to the district court for findings under our newly-enunciated standard.

**I**

The government charged five defendants with involvement in a drug conspiracy: Joshua Price ("Joshua"), Michelle Cherry, LaDonna Gibbs, Teresa Price ("Price"), and Sonya Parker. Much of the evidence in their case came from a cooperating witness, Ebon Sekou Lurks. Prior to trial, however, Lurks was murdered. The government moved to admit out-of-court statements by Lurks,

pursuant to Fed. R. Evid. 804(b)(6), on the grounds that the defendants wrongfully procured Lurks's unavailability.

In support of their motion, the government offered the following evidence. Lurks's ex-wife told Joshua of Lurks's cooperation with the government in retaliation for his obtaining custody of the Lurks' children. After this, Lurks reported being followed by Joshua and by Price. Approximately one week later, Price arranged to borrow a car from a friend, Beatrice Deffebaugh, explaining that she wanted to go on a date with another man without attracting her steady boyfriend's notice by using her usual car. So that Deffebaugh could pick up her children after work, Price loaned her another car, one that Deffebaugh described to an investigating agent as belonging to Gibbs. Joshua picked up Deffebaugh's car, which a witness noticed near Lurks' home at around 10 p.m on January 28, 1998. One of Joshua's girlfriends, Kenesha Colbert, testified to receiving a call from him around 10:40 p.m. and hearing Price's voice singing in the background.

Around 11 p.m., several shots were fired in the vicinity of Lurks's home. Two witnesses saw a tall, thin black man (a description consistent with Joshua Price's appearance) chasing a short, stout black man (a description consistent with Lurks's appearance). Another witness stated she saw a car in the vicinity of Lurks's home, resembling the one borrowed by Joshua and Price, immediately

after hearing shots fired. Additionally, one witness reported a license plate for the vehicle identical to that of the vehicle borrowed from Deffebaugh, save for the inversion of two digits. Police found Lurks's body not long after midnight. Price returned the borrowed car to her friend between midnight and 12:30 a.m on January 29, 1998. Further investigation discovered physical evidence linking Joshua to the murder: "debris" on Joshua's tennis shoes matching Lurks's DNA.

The district court held that Joshua procured the absence of Lurks and hence Lurks's statements were admissible against him.[1] It held, however, that there was insufficient evidence that Price procured Lurks's absence and "absolutely no evidence [that Cherry, Gibbs, and Parker] had actual knowledge of, agreed to or participated in the murder of . . . Lurks." United States v. Price, No. CR-98-10-S, order at 17 (E.D. Okla. Jan. 14, 1999). The district court therefore refused to find that those defendants had waived their Confrontation Clause and hearsay objections to the admission of Lurks's statements. See id. at 17-20.

**II**

"We review a trial court's evidentiary decisions for abuse of discretion. However, we subject to de novo review a trial court's legal conclusions about the

---

[1] Subsequent to this ruling, the district court severed Joshua's case from the cases of Price, Cherry, Gibbs, and Parker.

Federal Rules of Evidence and the Confrontation Clause." United States v. Torrez-Ortega, 184 F.3d 1128, 1132 (10th Cir. 1999) (citing United States v. Knox, 124 F.3d 1360, 1363 (10th Cir. 1997); Reeder v. American Econ. Ins. Co., 88 F.3d 892, 894 (10th Cir. 1996); Matthews v. Price, 83 F.3d 328, 332 (10th Cir. 1996)). "Because evidentiary rulings are within the sound discretion of the district court, this court will reverse only upon a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. A district court abuses its discretion if its decision is based upon an error of law." United States v. Samaniego, 187 F.3d 1222, 1223 (10th Cir. 1999) (internal quotations and citations omitted).

## A. Rule 804(b)(6) and the Waiver by Misconduct Doctrine

The Confrontation Clause of the Sixth Amendment protects a criminal defendant's "fundamental right" to confront the witnesses against him or her, including the right to cross-examine such witnesses. Pointer v. Texas, 380 U.S. 400, 404 (1965). "There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." Brookhart v. Janis, 384 U.S. 1, 4 (1966) (internal quotations and citations omitted).

The Supreme Court has held repeatedly that a defendant's intentional misconduct can constitute waiver of Confrontation Clause rights.  See, e.g., Douglas v. Alabama, 380 U.S. 415, 420 (1965); Snyder v. Massachusetts, 291 U.S. 97, 106 (1934), overruled on other grounds by Mallory v. Hogan, 378 U.S. 1 (1964); Reynolds v. United States, 98 U.S. 145, 158-59 (1878).  We have applied this principle to conclude that a defendant can waive confrontation rights by threatening a witness's life.  See United States v. Balano, 618 F.2d 624, 628-30 (10th Cir. 1979), overruled on other grounds by Richardson v. United States, 468 U.S. 317, 325-26 (1984).  "To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause."  Id. at 629 (quoting United States v. Carlson, 547 F.2d 1346, 1359 (8th Cir. 1977)); accord United States v. White, 116 F.3d 903, 911 (D.C. Cir. 1997); United States v. Houlihan, 92 F.3d 1271, 1279 (1st Cir. 1996); United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985); United States v. Mastrangelo, 693 F.2d 269, 272 (2d Cir. 1982); Steele v. Taylor, 684 F.2d 1193, 1202 (6th Cir. 1982); United States v. Thevis, 665 F.2d 616, 630 (5th Cir. Unit B 1982).

The recently-promulgated Rule 804(b)(6) of the Federal Rules of Evidence represents the codification, in the context of the federal hearsay rules, of this

long-standing doctrine of waiver by misconduct. Rule 804(b)(6) provides that the rule excluding hearsay does not apply to the following:

> **Forfeiture by wrongdoing.** A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

Fed. R. Evid. 804(b)(6). Although prior to Rule 804(b)(6), there was disagreement as to the proper burden of proof in making a showing of waiver by misconduct, compare Houlihan, 92 F.3d at 1280, with Thevis, 665 F.2d at 631, it was established in this Circuit that, "before permitting the admission of grand jury testimony of witnesses who will not appear at trial because of the defendant's alleged coercion, the judge must hold an evidentiary hearing in the absence of the jury and find by a preponderance of the evidence that the defendant's coercion made the witness unavailable." Balano, 618 F.2d at 629. The district court was correct in applying the same burden—preponderance of the evidence—and procedure in a case under the similar terms of Rule 804(b)(6). See Fed. R. Evid. 804(b)(6) advisory committee's note ("The usual Rule 104(a) preponderance of the evidence standard has been adopted in light of the behavior new Rule 804(b)(6) seeks to discourage.").

At issue in the instant case is whether Rule 804(b)(6) and the Confrontation Clause permit a finding of waiver based not on direct procurement but rather on involvement in a conspiracy, one of the members of which

wrongfully procured a witness's unavailability. The government argues that under the principle of conspiratorial liability articulated in <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946), defendants-appellees are responsible for the murder of Lurks as a foreseeable result of the drug conspiracy in which they were allegedly involved, and they thereby waive their Confrontation Clause and hearsay objections to his out-of-court statements.

We are aware of only one published case interpreting the terms "engaged or acquiesced in wrongdoing" since the recent promulgation of Fed. R. Evid. 804(b)(6). <u>See</u> <u>United States v. Emery</u>, 186 F.3d 921, 926-27 (8th Cir. 1999). <u>Emery</u> did not involve questions of waiver by conspiracy. Rather, it involved a defendant who directly and actively procured the witness's unavailability by organizing and participating in her murder—clearly a defendant who "engaged . . . in wrongdoing" within the meaning of the Rule. <u>See</u> <u>id.</u>

Turning to the language of Rule 804(b)(6), the use of the words "engaged or acquiesced in wrongdoing" lends support to the government's assertion that, at least for purposes of the hearsay rules, waiver can be imputed under an agency theory of responsibility to a defendant who "acquiesced" in the wrongful procurement of a witness's unavailability but did not actually "engage[]" in wrongdoing apart from the conspiracy itself. Fed. R. Evid. 804(b)(6). The proper scope of such imputed waiver as applied to a criminal defendant is best

defined in the context of the Confrontation Clause doctrine of waiver by misconduct. While the Confrontation Clause and the hearsay rules are not coextensive, see California v. Green, 399 U.S. 149, 155-56 (1970), it is beyond doubt that evidentiary rules cannot abrogate constitutional rights. We therefore read the plain language of Rule 804(b)(6) to permit the admission of those hearsay statements that would be admissible under the constitutional doctrine of waiver by misconduct, and hold that, in the context of criminal proceedings, the Rule permits the admission of hearsay statements by unavailable witnesses against defendants if those statements are otherwise admissible under the doctrine of waiver by misconduct. Our analysis of whether and under what circumstances waiver can be imputed under that doctrine and the acquiescence prong of the Rule is guided by two important but sometimes conflicting principles: the right to confrontation is "a fundamental right essential to a fair trial in a criminal prosecution," Pointer, 380 U.S. at 404; and "courts will not suffer a party to profit by his own wrongdoing," Houlihan, 92 F.3d at 1279; see also Balano, 618 F.2d at 629.

### b. Pinkerton Conspiratorial Liability

The government urges us to adopt the principles of conspiratorial liability enunciated in Pinkerton v. United States, 328 U.S. 640 (1946), in the context of Rule 804(b)(6) and the Confrontation Clause waiver-by-misconduct doctrine.

The Pinkerton Court held that evidence of direct participation in a substantive offense is not necessary for criminal liability under the principles holding conspirators liable for the substantive crimes of the conspiracy:

> [T]he overt act of one partner in crime is attributable to all. . . . If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.

328 U.S. at 647.

Pinkerton involved two brothers, Daniel and Walter Pinkerton, who were indicted for bootlegging on ten substantive counts and one conspiracy count of Internal Revenue Code violations. See id. at 641, 648. Although there was "no evidence to show that Daniel participated directly in the commission of the substantive offenses[,] . . . there was evidence to show that these substantive offenses were in fact committed by Walter in furtherance of the unlawful agreement or conspiracy existing between the brothers." Id. at 645 (footnote omitted). In Pinkerton, the criminal act was done "in execution of the enterprise" and "[t]he unlawful agreement contemplated precisely what was done." Id. at 647. The facts of Pinkerton, therefore, did not require the Court to decide the extent to which co-conspirators might be liable for overt acts not so precisely within the scope of their unlawful agreement. Nevertheless, the court noted in

dicta that,

> [a] different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.

Id. at 647-48.

The Eleventh Circuit has offered the following general description of how lower courts have applied Pinkerton liability:

> Generally, Pinkerton co-conspirator liability applies in two situations. First, where the substantive crime is also a goal of the conspiracy, e.g., where there is a narcotics conspiracy and a corresponding substantive crime of possession or distribution of cocaine. The second scenario is where the substantive offense differs from the precise nature of the ongoing conspiracy, but facilitates the implementation of its goals. For example, a particular co-conspirator, found guilty of conspiring to distribute drugs, may also be held liable for the substantive crime of possession of a firearm.

United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996); see also United States v. Broadwell, 870 F.2d 594, 603 (11th Cir. 1989). The Eleventh Circuit has "expanded the breadth of Pinkerton liability to include reasonably foreseeable but originally unintended substantive crimes, in other words, embracing substantive crimes occurring 'as a result of an unintended turn of events.'" Mothersill, 87 F.3d at 1218 (quoting United States v. Alvarez, 755 F.2d 830, 850 (11th Cir. 1985)). It has also recognized the necessary limits of such an

extension:

> The extension of co-conspirator liability to "reasonably foreseeable but originally unintended substantive crimes" must be limited by due process as <u>Alvarez</u> realized. Thus, <u>Alvarez</u>'s holding is limited to conspirators "who played more than a 'minor' role in the conspiracy, or who had actual knowledge of at least some of the circumstances and events culminating in the reasonably [foreseeable] but originally unintended substantive crime."

<u>Id.</u> (quoting <u>Alvarez</u>, 755 F.2d at 851 n.27); <u>see also</u> <u>United States v. Castaneda</u>, 9 F.3d 761, 766 (9th Cir. 1993) (collecting cases from four circuits recognizing similar due process limitations on <u>Pinkerton</u> liability).

This Circuit has not, like the Eleventh Circuit, gone as far as extending the doctrine to "substantive crimes occurring 'as a result of an unintended turn of events.'" <u>Mothersill</u>, 87 F.3d at 1218 (quoting <u>Alvarez</u>, 755 F.2d at 850). Rather, we have described <u>Pinkerton</u> liability as follows:

> During the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators. Of course, a conspirator is only responsible for the crimes of the conspirators that are committed in furtherance of the conspiracy. As stated by the Supreme Court, conspirators are responsible for crimes committed "within the scope of the unlawful project" and thus "reasonably foreseen as a necessary or natural consequence of the unlawful agreement."

<u>United States v. Russell</u>, 963 F.2d 1320, 1322 (10th Cir. 1992) (quoting <u>Pinkerton</u>, 328 U.S. at 646-48). A conspirator, moreover, is only liable for the acts of co-conspirators "until the conspiracy accomplished its goals or that conspirator withdraws." <u>United States v. Brewer</u>, 983 F.2d 181, 185 (10th Cir.

- 12 -

1993) (citing Hyde v. United States , 225 U.S. 347, 369 (1912)  ). The defense of termination by withdrawal requires that the defendant show that he or she has done "some act to disavow or defeat the purpose" of the conspiracy. Hyde, 225 U.S. at 369; see also Russell , 963 F.2d at 1322-23. While we have applied Pinkerton to find defendants guilty of firearm charges for co-conspirators' use of firearms, see, e.g., United States v. Wacker, 72 F.3d 1453, 1464 (10th Cir. 1995); United States v. Davis, 1 F.3d 1014, 1017 (10th Cir. 1993), we have never extended the doctrine to hold co-conspirators liable for first-degree murder that was not the original object of the conspiracy. Although intimidation and violence may or may not be foreseeable results of a particular drug conspiracy, first-degree murder liability incorporates a specific intent requirement far more stringent than mere foreseeability. See 18 U.S.C. § 1111.[2] To extend substantive

---

[2] We express no opinion as to whether a person can be liable for first-degree murder pursuant to Pinkerton. For our purposes, it is only important that a conspirator can be held liable for some degree of homicide when the homicide was committed by a co-conspirator in furtherance of an on-going conspiracy and was reasonably foreseeable as a necessary and natural consequence of the conspiracy. This Court recently noted that to convict a defendant of either second degree murder or involuntary manslaughter, the government need not prove a specific intent to kill, but only that the defendant acted with a "reckless and wanton disregard for human life," a disregard which must be extreme to elevate the crime to second-degree murder. United States v. Wood, No. 99-7008, 2000 WL 328142, *3 (10th Cir. March 29, 2000). A person who participates in a conspiracy when murder is reasonably foreseeable as a necessary and natural consequence in furtherance of and within the scope of an ongoing conspiracy acts with a sufficiently reckless and wanton disregard for human life to satisfy the

(continued...)

Pinkerton liability in the manner urged by the government would apparently render every minor drug distribution co-conspirator, regardless of knowledge, the extent of the conspiracy, its history of violence, and like factors, liable for first-degree murder. Such a result appears incompatible with the due process limitations inherent in Pinkerton.

Because of these concerns, and because the issue is not before us, we decline to adopt today the Eleventh Circuit's version of Pinkerton liability in the context of substantive criminal liability. We do agree, however, that Pinkerton's formulation of conspiratorial liability is an appropriate mechanism for assessing whether the actions of another can be imputed to a defendant for purposes of determining whether that defendant has waived confrontation and hearsay objections. It would make little sense to limit forfeiture of a defendant's trial rights to a narrower set of facts than would be sufficient to sustain a conviction and corresponding loss of liberty. Therefore, we conclude that the acquiescence prong of Fed. R. Evid. 804(b)(6), consistent with the Confrontation Clause, permits consideration of a Pinkerton theory of conspiratorial responsibility in determining wrongful procurement of witness unavailability, and we turn to

---

[2](...continued)
intent element of, at a minimum, involuntary manslaughter. A defendant can therefore waive his confrontation rights under circumstances which also justify imposing criminal liability for manslaughter pursuant to the Pinkerton doctrine.

waiver-by-misconduct case law to define the precise contours of such responsibility.

## C. Conspiratorial Responsibility and "Acquiescence" Under Rule 804(b)(6)

We are unaware of any published opinions adopting or rejecting a theory of agency based on <u>Pinkerton</u> liability in the context of the doctrine of waiver by misconduct. Several opinions, however, have addressed more generally the applicability of imputed agency in that context. An examination of those cases provides us a framework in which to define with greater precision the parameters of co-conspiratorial waiver of confrontation and hearsay objections.

<u>United States v. Mastrangelo</u>, 693 F.2d 269, 273-74 (2d Cir. 1982), adopted a broad definition of imputed waiver. That case involved the question of whether the grand jury testimony of a murdered witness could be admitted in the defendant's trial on charges of drug conspiracy. <u>See</u> <u>id.</u> at 272. The Second Circuit held that if

> Mastrangelo was in fact involved in the death of [the witness] through knowledge, complicity, planning or in any other way, [the district court] must hold his objections to the use of [the witness's] testimony waived. Bare knowledge of a plot to kill [the witness] and a failure to give warning to appropriate authorities is sufficient to constitute a waiver.

<u>Id.</u> at 273-74. Because the record was insufficient to determine how, if at all, Mastrangelo was "involved" in the witness's murder, the case was remanded. <u>See</u> <u>id.</u> at 274.

The First Circuit in <u>United States v. Houlihan</u>, 92 F.3d 1271, 1280 (1st Cir. 1996), held that a defendant waives his right to object on confrontation grounds to a witness's out-of-court statements when the defendant "(1) causes a potential witness's unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the potential witness from testifying at a future trial." Unlike <u>Mastrangelo</u>, this formulation requires an affirmative act by the particular defendant, but does not address in detail what that act might be. <u>Houlihan</u> did involve a conspiracy; however, the two defendants specifically conspired to murder the potential witness, rather than murdering him in the course of a conspiracy with some other objective. <u>See</u> <u>id.</u> (finding that "[t]he record amply demonstrates that Houlihan and Nardone knew when they conspired to murder Sargent that they were depriving the government of a potential witness"). The opinion was primarily concerned with whether the waiver-by-misconduct doctrine applies to potential as well as actual witnesses, and not with whether the defendants caused the potential witness's death. <u>See</u> <u>id.</u> Therefore, it appears that, despite its language of individual causation, <u>Houlihan</u> does not reach the question of whether and to what extent a defendant may be held to the consequences of a co-conspirator's wrongful act undertaken with the purpose of procuring, and ultimately causing, a potential witness's unavailability.

In Olson v. Green, 668 F.2d 421 (8th Cir. 1982), a habeas corpus challenge to a state conviction, the Eighth Circuit also offered a relatively limited formulation of the doctrine of vicarious waiver of Confrontation Clause rights, but it too did not address directly questions of conspiratorial responsibility:

> The right to confront witnesses is a constitutional right personal to the accused. Only Dale Olson or someone acting on his behalf may waive or forfeit that right. The State has not established that Black acted on Olson's behalf or that they acted together to procure Link's silence. Therefore, Black's conduct intimidating Link into silence may not be attributed to Olson to effect a waiver of Olson's right to confront Link.

Id. at 429 (citing Carlson, 547 F.2d at 1357; United States v. Mayes, 512 F.2d 637, 650-51 (6th Cir. 1975)). Although Olson did not specifically address issues of conspiratorial liability, even under its theory of Confrontation Clause rights as personal to the accused, there is room for an agency theory of waiver when one party "acts on [another's] behalf." Id. Under a Pinkerton theory, agency is inferred if an act is within the scope of the conspiracy, thereby resulting in the co-conspirator's individual liability under the substantive criminal law. See Russell, 963 F.2d at 1322. A theory of waiver mirroring Pinkerton liability is therefore not necessarily inconsistent with the Eighth Circuit's analysis, which allows for vicarious waiver when the government can establish that the co-conspirator "acted on [the defendant's] behalf or that they acted together." Olson, 668 F.2d at 449.

The district court opinion in United States v. White, 838 F.Supp. 618 (D. D.C. 1993), aff'd, 116 F.3d 903 (D.C. Cir. 1997), on which the district court in this case understandably relied, rejected co-conspiratorial waiver in a factual context quite similar to that before us. In White, the government, relying on Mastrangelo, sought to admit the statements of a murdered police informant against co-conspirators in a drug conspiracy, apparently based solely on their participation in the conspiracy, without any allegations of knowledge and without any discussion of the scope of the conspiracy and foreseeability of the murder. See id. at 622-24. White rejected the holding of Manstrangelo as "too broad." Id. at 623. Based on its belief that "[m]ere failure to prevent the murder, or mere participation in the alleged drug conspiracy at the heart of the case, must surely be insufficient to constitute a waiver of a defendant's constitutional confrontation rights," the court required "the government to show that the particular defendant participated in some manner in the planning or execution of the murder." Id.

While we agree with the White approach to the extent involvement in a conspiracy may not be sufficient, standing alone, to waive confrontation rights, the White analysis is incomplete. By analogy to Pinkerton, mere participation in a conspiracy does not suffice—yet participation may suffice when combined with findings that the wrongful act at issue was in furtherance and within the scope of

- 18 -

an ongoing conspiracy and reasonably foreseeable as a natural or necessary consequence thereof.  Cf. Russell, 963 F.2d at 1322.

Failure to consider Pinkerton conspiratorial responsibility affords too much weight to Confrontation Clause values in balancing those values against the importance of preventing witness tampering.  See Balano, 618 F.2d at 629.  By recognizing the applicability of agency concepts and permitting admission of the testimony of an unavailable witness against a co-conspirator involved in, but not necessarily immediately responsible for, procuring that witness's unavailability, a Pinkerton theory strikes a better balance between the conflicting principles at stake.  This is particularly so considering the potential windfall to defendants and the fundamental principle that "courts will not suffer a party to profit by his own wrongdoing."  Houlihan, 92 F.3d at 1279.  We therefore hold that a co-conspirator may be deemed to have "acquiesced in" the wrongful procurement of a witness's unavailability for purposes of Rule 804(b)(6) and the waiver by misconduct doctrine when the government can satisfy the requirements of Pinkerton, 328 U.S. at 647-48.

We are mindful of the district court's solicitude for confrontation rights, and its hesitancy to embrace a novel application of      Pinkerton  liability, as well as the relative paucity of case law in this area.  We therefore will attempt to articulate as clearly as possible the proper inquiry      , so as to provide guidance to

the district court on remand and to future courts faced with similar circumstances.

Based on our balancing of the aims of the Confrontation Clause with the grave

evil the well-established waiver-by-misconduct rule aims to prevent, we hold that

the following interpretation of the "acquiescence" prong of Rule 804(b)(6) is

consistent with the Confrontation Clause:

A defendant may be deemed to have waived his or her Confrontation

Clause rights (and, a fortiori, hearsay objections) if a preponderance of the

evidence establishes one of the following circumstances: (1) he or she

participated directly in planning or procuring the declarant's unavailability

through wrongdoing, cf. Houlihan, 92 F.3d at 1280; or (2) the wrongful

procurement was in furtherance, within the scope, and reasonably foreseeable as

a necessary or natural consequence of an ongoing conspiracy, see Russell, 963

F.2d at 1322.[3]

### D. Application of Rule 804(b)(6)

We therefore examine the district court's order in light of our newly-

elucidated standard. We conclude the district court did not abuse its discretion in

holding that the government failed to show by a preponderance of the evidence

---

[3] We emphasize that these are circumstances in which a defendant can be deemed to have procured the unavailability of a witness for purposes of Fed. R. Evid. 804(b)(6) and the waiver-by-misconduct doctrine, and that they do not purport to define liability for substantive crimes, which may be subject to additional due process or other limitations. Cf. Alvarez, 755 F.2d at 851 n.27.

that any of the defendants directly participated in the execution of the murder, but remand for application of the planning and Pinkerton tests. We take this opportunity to note that, even if the district court finds the standard for waiver by acquiescence to be met for some or all appellees, and thereby their Confrontation Clause and hearsay objections to be forfeited, the district court is still free to consider concerns of weighing prejudice against probative value under Fed. R. Evid. 403. See United States v. Aguiar, 975 F.2d 45, 48 (2d Cir. 1992).

### 1. Scope of Conspiracy, Furtherance, and Reasonable Foreseeability as a Necessary and Natural Consequence

Relying on White, 838 F.Supp. at 618, the district court concluded that "the mere fact [that defendants] may have participated in the drug conspiracy did not constitute a waiver of [their] constitutional confrontation rights." Cherry, No. CR-98-10-S, order at 18. This statement is correct, as far as it goes. However, today we hold that participation in an ongoing drug conspiracy may constitute a waiver of constitutional confrontation rights if the following additional circumstances are present: the wrongdoing leading to the unavailability of the witness was in furtherance of and within the scope of the drug conspiracy, and such wrongdoing was reasonably foreseeable as a "necessary or natural" consequence of the conspiracy. We therefore remand to the district court for findings on the Pinkerton factors as to Lurks's murder: whether it was in furtherance and within the scope of the conspiracy, and whether

- 21 -

it was reasonably foreseeable as a necessary or natural consequence of that conspiracy. We note that the scope of the conspiracy is not necessarily limited to a primary goal—such as bank robbery—but can also include secondary goals relevant to the evasion of apprehension and prosecution for that goal—such as escape, or, by analogy, obstruction of justice. Cf. United States v. Willis, 102 F.3d 1078, 1083-84 (10th Cir. 1996). We further reiterate that, under Pinkerton, a defendant is not responsible for the acts of co-conspirators if that defendant meets the burden of proving he or she took affirmative steps to withdraw from the conspiracy before those acts were committed. See Russell, 963 F.2d at 1322-23; see also Hyde, 225 U.S. at 369 (requiring "some act to disavow or defeat the purpose" of the conspiracy to establish withdrawal).

We note that the district court found "there is absolutely no evidence" that defendants Cherry, Gibbs, and Parker (although not Teresa Price) "had actual knowledge of, agreed to or participated in the murder of Ebon Sekou Lurks." United States v. Cherry, No. CR-98-10-S, order at 17. After complete review of the record, we conclude that this finding of fact is not clearly erroneous. It does not, however, foreclose the possibility of waiver under a Pinkerton theory. Actual knowledge is not required for conspiratorial waiver by misconduct if the elements of Pinkerton—scope, furtherance, and reasonable foreseeability as a necessary or natural consequence—are satisfied. See, e.g., Willis, 102 F.3d at

- 22 -

1083 (holding that lack of actual knowledge does not obviate <u>Pinkerton</u> liability). A defendant's actual knowledge of a co-conspirator's intent to murder a witness in order to prevent discovery or prosecution of the conspiracy may prove relevant to those elements.

### 2. Planning

Although the district court found the evidence was "insufficient to show that by a preponderance of the evidence the Defendant Teresa Price procured the absence of Ebon Sekou Lurks," <u>Cherry</u>, No. CR-98-10-S, order at 17, it did not discuss whether the evidence that she obtained the car used in Lurks's murder under false pretenses, combined with her apparent proximity to Joshua around the time of the murder, would be sufficient circumstantial evidence to support a finding that she participated in the planning of the murder. <u>See</u> <u>Houlihan</u>, 92 F.3d at 1280. We therefore remand for specific findings on whether the government can meet its burden of showing that Price participated in the planning of Lurks's murder so as to permit a finding of waiver by misconduct.[4]

### III

To summarize, we remand to the district court for findings on the following issues: (1) did Teresa Price participate in the planning or carrying out

---

[4] The record before us is entirely devoid of evidence that defendants Cherry, Gibbs, and Parker participated in the planning of the murder.

of Lurks's murder by Joshua Price; (2) was Joshua Price's murder of Lurks within the scope, in furtherance, and reasonably foreseeable as a necessary or natural consequence, of an ongoing drug distribution conspiracy involving the defendants?  The district court's order is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.

No. 99-7019, *United States v. Cherry, et al.*


**HOLLOWAY**, Circuit Judge, dissenting in part.

I must respectfully dissent from the principal holdings in the majority opinion based on an extension of *United States v. Pinkerton*, 328 U.S. 640 (1946), and the suggested application of Fed. R. Evid. 804(b)(6). From them, the majority finds a waiver of the constitutional right to confrontation and the hearsay rule. In my view the Order of the District Judge denying admission of the hearsay statements of the unavailable witness, Lurks, was sound and properly rejected the government's attempt at an expansive view of *Pinkerton* and an unwarranted interpretation of the new waiver-by-misconduct Rule 804(b)(6). I do, however, agree with the government that a remand be made in order that the district court may consider whether defendant Teresa Price may have acquiesced in the murder of Lurks so that her misconduct would make Lurks's statements admissible as to her, though he is unavailable to testify and be cross-examined.

The Order of the District Judge, pp. 9-10, points out that the government argues it should be allowed to introduce oral statements of the unavailable witness, Lurks, against all defendants because by their securing the absence of Lurks and eliminating him as a witness, the defendants waived all confrontation rights and hearsay objections they might otherwise have, apparently relying on its expansive view of *Pinkerton* and the waiver-by-misconduct provisions of Rule

804(b)(6). The Order notes further that the government argues that the defendants as co-conspirators would be criminally liable for the murder of Lurks and that, as a result, "they too, by virtue of being a part of the drug conspiracy, have waived their right to confrontation of the deceased witness." Order at 10.

The Order finds, however, that there is "absolutely no evidence that [defendants Cherry, Gibbs and Parker] had actual knowledge of, agreed to or participated in the murder of Ebon Sekou Lurks." Order at 17. The Order notes that the government argues that even if there is insufficient evidence of actual participation by these three defendants in the murder, "they still have waived their right to confrontation by the mere fact they are members of the drug conspiracy." *Id*. at 17. The Order says the government argues that these three defendants waived their confrontation right "because it was reasonably foreseeable to them Joshua Price could murder a witness in order to protect the drug distribution operation." *Id*. at 18.

The District Judge found, Order at 18, that the mere fact that these defendants may have participated in the drug conspiracy did not constitute a waiver of their constitutional confrontation rights with respect to the admission of out-of-court statements, citing *U. S. v. White*, 838 F. Supp. 618 (D.D.C. 1993), *aff'd*, 116 F.3d 903 (D.C.Cir. 1997). The Order below pointed to the following reasoning in *White*, which is also persuasive to me:

"Mere failure to prevent the murder, or mere participation in the alleged drug conspiracy at the heart of this case, must surely be insufficient to constitute a waiver of a defendant's constitutional confrontation rights. [838 F.Supp.] at 623."

The judge's Order cited also *Olson v. Green*, 668 F.2d 421, 429 (8th Cir.), *cert. denied*, 456 U. S. 1009 (1982). In *Olson*, the 8th Circuit held that the right to confront witnesses is a constitutional right personal to the accused and that only the defendant or someone acting on his behalf may waive or forfeit that constitutional right. *Id*. at 429.

I agree with the cogent reasoning of the District Judge here that "[t]o say a defendant has waived [his right under the confrontation clause] merely because of his participation in a drug conspiracy is too expansive and goes against the rule of fundamental fairness." Order at 19. The conclusion of the District Judge is buttressed by the long standing principle restated in *Brookhart v. Janis*, 384 U.S. 1, 4 (1966):

"There is a presumption against the waiver of constitutional rights. . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464." (internal citation omitted).

In sum, I agree with the ruling of the District Judge that as to defendants Michelle Cherry, LaDonna Gibbs, and Sonya Parker, the government's motion to admit the out-of-court statements of Lurks should be denied. Order at 17, 20. However, I am in agreement with the government that before a final evidentiary

ruling as to defendant Teresa Price, there should be a remand to determine whether under Rule 804 (b)(6), Price "acquiesced" in the murder of Lurks. The government suggests that apart from *Pinkerton,* it was error not to consider whether Price acquiesced in Lurks's murder which allegedly was intended to and did procure his unavailability. I agree that our remand should call for findings on the issue of such alleged acquiescence by defendant Teresa Price.