## EUREKA LAKE & YUBA CANAL COMPANY *v.* SUPERIOR COURT OF YUBA COUNTY.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Submitted December 21, 1885.—Decided January 18, 1886.

When the court may reasonably infer from the record in a case brought here by writ of error from a State court that the Federal question raised here was necessarily involved in the decision there, the court will not dismiss the writ on motion to dismiss for want of jurisdiction, although it may not appear affirmatively on the record that the question was raised there.

When a court, having acquired jurisdiction of a cause and the parties to it, issues an order upon one of the parties to show cause why he should not be punished for contempt in disobeying a temporary restraining order of injunction made in the cause, and he conceals himself to evade service of the process, the court may, on proper return of the facts, direct service of the order to show cause to be made on his attorney of record, and after due service thereof, may proceed to hear the order to show cause, and to adjudge the same.

This was a motion to dismiss the writ of error for want of jurisdiction, with which was united a motion to affirm.

The record in the case showed that the Eureka Lake and Yuba Canal Company, (Consolidated,) was a New York corporation doing business in California, and that in or about the month of March, 1880, the company filed in the office of the Secretary of State of California an instrument designating and appointing "David Cahn, of 205 Sansome Street, in the city of San Francisco, . . . as the person upon whom process issued by authority of or under any law of the State of California may be served, and all process served upon said David Cahn will be valid and binding upon said corporation." This was done in compliance with an act of the legislature of California, entitled "An Act in relation to foreign corporations," approved April 1, 1872. On the 3d of October, 1882, the county of Yuba brought suit against the corporation in the Superior Court of that county to enjoin the corporation from depositing or suffering to flow into the channel or bed of the Yuba River, or any of its tributaries, "the tailings from its hydraulic mines, or the earth, sand, clay, sediment, stones, or other material discharged from its said mines," and from selling to others any water to be used in hydraulic mining. Immediately upon the bringing of the suit an *ex parte* restraining order was entered by the court in accordance with the prayer of the complaint. Process in the suit and a copy of the restraining order were served on Cahn November 9, 1882. On the 5th of December a motion was made to set aside this service. This motion was denied December 23d, and on the 17th of January the corporation, by James K. Byrne and

W. C. Belcher, its attorneys, filed a demurrer to the complaint. On the 20th of January an order was entered requiring the corporation to show cause, February 2d, why it should not be punished for a contempt of court in disobeying the injunction. Service of this order was directed to be made on Bigelow, the managing agent of the company, or on Cahn, the designated agent for the service of process. This service was not made on account of the absence of Cahn in the city of New York, where the company had its principal place of business. Thereupon, the time for showing cause was changed to March 24th, and service of an order to this effect was made on Cahn March 5th. After this service, the corporation appeared by its attorneys and moved to set aside the order to show cause, on the ground, among others, that Cahn was not on the 5th of March, "and had not been for more than one month prior thereto," the person designated by the corporation as its agent for the service of process. Upon the hearing of this motion, it appeared that the appointment of Cahn as process agent had been revoked and Bigelow put in his place. Such being the case, a further order was entered requiring like cause to be shown April 23d, and efforts were made to serve this order on Bigelow, who was the only person in the State on whom process against the corporation could be served. Bigelow resided at the mines, and the record shows clearly that he purposely kept himself out of the way of the officer to avoid service. No service was, therefore, made on him, and upon the return of the facts, supported by affidavits, May 14th was fixed by the court as the time for the hearing, and an order was entered that service be made upon "the attorneys of record herein of said defendant." This service was effected. At the return day the attorneys of the defendant, appearing specially for that purpose, moved to set aside the order to show cause, 1, because the restraining order was void, the court having "no jurisdiction of the person of the defendant at the time the said order was made and issued;" 2, because the "judge who made the same was, at the time the same was made, disqualified by law to make the said order;" 3, be-

cause the order " was granted without due notice, or any notice whatever, to the proper officer, or any officer or officers, or to the managing agent, or any agent of said corporation, of the application therefor;" 4, because the restraining order was "never served on the defendant;" and, 5, because the order to show cause was "never served upon the defendant." This motion was overruled, and thereupon, the corporation not appearing, ." by attorney, or otherwise, to show cause  .  .  . in relation to said contempt," but making default "in said matter of contempt," a hearing was had "upon said order to show cause, and said affidavits and the records and papers in said court and action," and the corporation was adjudged to be guilty of contempt, and to " pay a fine to the people of the State of California in the sum of two hundred and fifty dollars as a punishment for such contempt, and that execution issue in the name of the people of the State of California against said defendant therefor."

On the 26th of July, 1883, the corporation filed in the Supreme Court of the State a petition for review, on the ground that " in entering said order of injunction, and in assuming thereafter to adjudge the petitioner guilty of contempt for its alleged violation of said order, the said Superior Court of said County of Yuba, and the said judge thereof, exceeded the jurisdiction thereof." Upon this petition the orders of the Superior Court were affirmed, and to reverse that judgment this writ of error was brought.

*Mr. A. L. Rhodes* for the motions.

*Mr. W. W. Cope* opposing.—In affirming the judgments the Supreme Court of California necessarily decided that service upon the attorney of the corporation of the order to show cause why it should not be punished for contempt, gave the court jurisdiction, and warranted judgments, the execution of which would result in the loss of its property. Such service was not " due process of law " within the meaning of the Constitution of the United States, and the judgment violates the prohibition of section 1 of the Fourteenth Amendment. The

Supreme Court in giving judgment referred to its decision in *Golden Gate Mining Co.* v. *Superior Court of Yuba County*, 65 Cal. 187, 192, where it said : " The defendant in the action had entrusted its attorneys with the protection of its interests and the defence of its rights. We can see no abuse of authority on the part of the court in directing that the order to show cause should be served on an attorney, since it was made to appear that the defendant, by reason of its own acts, could not be served personally. The process was suitable, and the mode adopted by the court conformable to the spirit of the code."

This doctrine we respectfully contend is in violation of the Constitution of the United States. It confounds the distinction between criminal and civil contempts, and the different methods of obtaining jurisdiction of the persons of the perpetrators of such offences. It assumes that because an attorney is employed to protect the civil rights of a party, he represents him in criminal proceedings growing out of the conduct of those civil rights. This court held in *New Orleans* v. *Steamship Co.*, 20 Wall. 387, 392, that " contempt of court is a specific criminal offence ; " that the imposition of a fine for it is a judgment in a criminal case ; and that " that part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing." The same doctrine is held in Virginia, *Baltimore & Ohio Railroad Co.* v. *Wheeling*, 13 Grattan, 40, 57 ; and in New York, *Pitt* v. *Davison*, 37 Barb. 97, 109, 110. It is true this case was reversed by the Court of Appeals, but not upon this point, as the syllabus shows. And this is the construction put upon the case in Wells on Jurisdiction of Courts, § 193 ; and in Rapalje on Contempts, § 21, where it is said : " Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court ; while criminal contempts are all those acts in disrespect of the court, or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute ; such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence

which interrupt its proceeding; also, disobedience to or resistance of the process of the court; interference with property in the custody of the law; misconduct of officers, etc." *Ex parte Edwards,* 11 Florida, 174, 184; *Matter of Watson,* 3 Lansing, 408; *People* v. *Cowles,* 4 Keyes, 38, 46; *Hawley* v. *Bennett,* 4 Paige, 163; *People* v. *Spalding,* 10 Paige, 284. See also *Phillips* v. *Welch,* 11 Nevada, 187.

Speaking of the principle for which we are here contending, the Supreme Court of New York, in *Stuart* v. *Palmer,* 74 N. Y. 183, 190, says: "It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty, or property without an opportunity to be heard in defence of his rights, and the constitutional provision that no person shall be deprived of these ' without due process of law ' has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the Federal or State Constitution. It is a limitation upon arbitrary power, and it is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the Legislature cannot do nor authorize to be done. Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. *Weimer* v. *Bunbury,* 30 Mich. 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights."

We think the court will hardly consider the question a frivolous one; and there being no color of right to a dismissal, the motion to affirm must be denied under the rule laid down in *Whitney* v. *Cook,* 99 U. S. 607.

Mr. Chief-Justice Waite delivered the opinion of the court. After stating the facts in the language reported above, he continued:

It does not appear affirmatively on the face of the record that the orders of the Superior Court were objected to in the Supreme Court on the ground that, in the absence of personal

service of the order to show cause on some officer, or authorized agent of the corporation, the judgment in the contempt proceeding was without due process of law, and therefore contrary to the Fourteenth Amendment of the Constitution of the United States; yet that point is made here, and it is possible its decision was necessarily involved in the final order that was made. For this reason the motion to dismiss is overruled; but there was sufficient color of right to a dismissal to warrant uniting a motion to affirm with the motion to dismiss, and on consideration of that motion we are entirely clear the case ought not to be retained for further argument. Section 187 of the Code of Civil Procedure in California is as follows:

"When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

Under this statute the courts of California hold that "when a party charged with contempt in disobeying a legal order wilfully conceals himself to avoid service of an order to show cause why he should not be adjudged guilty of contempt, the court is not powerless to proceed, or to prevent the continued disregard of its lawful order," but may order, as justice shall require, after due service of an order to show cause, on the attorneys of the party proceeded against. In *Golden Gate Mining Co. v. Superior Ct.*, 65 Cal. 187, 192, the Supreme Court said: "The defendant in the action [a corporation] had entrusted its attorneys with the protection of its interests and the defence of its rights. We can see no abuse of authority on the part of the court in directing that the order to show cause should be served on an attorney, since it was made to appear that the defendant by reason of his own acts could not be served personally. The process was 'suitable,' and the mode adopted by the court 'conformable to the spirit of the code.'" The good sense of this rule is manifest. A corporation can only be served with process through some officer or agent. It is

certainly competent for a state to determine who this officer or agent shall be, or how he shall be designated by the corporation. In California a foreign corporation is required to make such a designation, and to give public notice thereof by filing the instrument of designation in the office of the secretary of State. After this suit was begun that agency was changed by this corporation, and the person designated, instead of being located at San Francisco, where he could be easily found, was at the mines. This change was made after the service of the injunction on the former agent, and after the court had determined that the service upon him was sufficient to bring the corporation into court. It was also made after the corporation had been guilty, as was alleged, of a violation of the injunction and after an attempt had been made to serve an order to show cause on Cahn, the old agent. The new agent was to be found only at a place difficult of access, and even there he kept himself concealed from the officer who had been charged with the duty of making the service. As he was the only person in the State on whom process could be served, his concealment to avoid service was in law the concealment of the corporation itself, and the court was left free to act accordingly.

By section 1209 of the Code of Civil Procedure of California "disobedience of any lawful judgment, order, or process of the court" is declared to be a contempt of the authority of the court. As was said by this court *In re Chiles*, 22 Wall. 157, 168, the exercise of the power to punish for contempt "has a two-fold aspect, namely: first, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform." This being the case, to deny the court the power of calling on a concealed corporation through its chosen attorney of record in a suit to appear and answer to a charge of contempt for disobeying the orders of the court duly entered in that suit, would be to deny it the power of vindicating its authority and enforcing obedience to its lawful commands against a party personally subjected to its jurisdiction. Although the proceeding may be

criminal in its nature, it grows out of the suit to which the person proceeded against is a party and actually represented by an attorney. Ordinarily a corporation has in such a case a right to service of an order to show cause upon some officer or agent, but if its officers or agents keep themselves out of the way for the express purpose of avoiding such a service, it cannot justly complain if service on its attorney is made the equivalent of that which its agents by their wrongful acts have made impossible. The same principle applies here that governed this court in *Reynolds* v. *United States*, 98 U. S. 145, 158, where it was held that, although the Constitution gives an accused person the right to a trial at which he shall be confronted with the witnesses against him, yet, if a witness was absent by his own wrongful procurement he could not complain if competent evidence was admitted to supply the place of that which he kept away. It was said the Constitution "grants him the privilege of being confronted with the witnesses against him, but if he voluntarily keeps the witnesses away he cannot insist on his privilege." So here the corporation was perhaps entitled to service on its officers or agents, but as this was prevented by their wrongful acts, the privilege cannot be insisted upon.

*The motion to dismiss is denied, but that to affirm is granted.*