53 Cal.Rptr.3d 288 (2007)
146 Cal.App.4th 973
The PEOPLE, Plaintiff and Respondent,
v.
Rickey David COSTELLO, Defendant and Appellant.
No. E037674.
Court of Appeal of California, Fourth District, Division Two.
January 12, 2007.
*289 John L. Dodd, under appointment by the Court of Appeal, Tustin, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Lilia E. Garcia, Supervising Deputy Attorney General, and Janelle Marie Boustany, Deputy Attorney General, for Plaintiff and Respondent.
CERTIFIED FOR PARTIAL PUBLICATION.[*]

OPINION
RAMIREZ, P.J.
A jury convicted defendant of first degree murder (Pen.Code, § 187, subd. (a)), making criminal threats (Pen.Code, § 422) and inflicting corporal injury on the mother of his child (Pen.Code, § 273.5, subd. (a)). In bifurcated proceedings, the trial court found true allegations that he had suffered two strike priors (Pen.Code, § 667, subds. (b)-(i)), two serious priors (Pen.Code, § 667, subd. (a)(1)) and three priors for which he served prison terms (Pen.Code, § 667.5, subd. (b)). He was sentenced to prison for life (with a minimum parole eligibility of 75 years), plus a term of 25 years to life, plus 14 years. He appeals, claiming evidence was erroneously admitted. We reject his contention and affirm, while directing the trial court to correct an error in the abstract of judgment.

I

Facts
On April 28, 2000, defendant lolled the mother of his child and dumped her body in a trash can at her father's home, where she had been living. More facts, including those related to defendant's making criminal threats to the victim and inflicting corporal injury on her, will be described below.

1. Admission of the Victim's Statements

a. Whether They were Spontaneous Declarations

Over defense objection, the trial court admitted as spontaneous declarations *290 six sets of statements by the victim to police officerstwo concerning the non-homicide offenses and four concerning prior bad acts by defendant which were admitted under Evidence Code section 1109. Defendant here contends that the trial court abused its discretion in concluding that these sets of statements were spontaneous declarations because the facts upon which the trial court relied in so concluding are not supported by a preponderance of the evidence. (People v. Trimble (1992) 5 Cal.App.4th 1225, 1234, 7 Cal.Rptr.2d 450.) We disagree.
The officer who responded to a dispatch concerning defendant's 1998 infliction of corporal injury on the victim (count 3) , testified at a hearing pursuant to Evidence Code section 402 (hereafter, section 402 hearing) that he had been dispatched to the victim's home around 4:00 a.m. The victim was crying, scared and extremely upset and she continued to sob as they spoke. The right side of her face was red and swollen, she: had blood at the entrances of her nostrils and there were cuts inside her lips. The victim told the officer before he had a chance to ask her anything that defendant had assaulted her. She went on to say that defendant had come to her home to discuss money and he got upset. He slapped her several times in the face, knocking her to the ground. He sat on her chest and choked her with both hands to the point where she thought she was going to pass out. She broke away twice, but he gained control of her both times and resumed choking her. Defendant went to a bedroom and the victim ran to a neighbor's home to call the police because there was no phone in her home. As she made her way to her neighbor's, defendant walked past her and said, "I'm gonna get you, wait and see...." The victim said the incident occurred five minutes before the officer arrived at her home. As defendant points out, the declaration "must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance[.]" (Showalter v. Western Pacific R.R. Co. (1940) 16 Cal.2d 460, 468, 106 P.2d 895.) Defendant contends that because the victim did not call the police until after she left her home and he had left the area,[1] and she was in a different place than where the crime occurred when she made her statements, they could not be spontaneous and excited. He cites no case holding that the passage of five minutes, and/or the relocation of the declarant, as a matter of law, extinguishes the latter's spontaneity or state of excitement. He presents no persuasive argument that the trial court acted unreasonably in concluding that the victim was dominated by nervous excitement at the time she made the statements.
The officer who responded to a call from the victim concerning defendant making criminal threats in 2000 (count 2) testified at a section 402 hearing that he arrived at the victim's father's trailer, where the victim was living, either five or eight minutes after her call. The victim was upset, shaking, trembling and distraught. She was sniffling and trying to hold back tears throughout her conversation with the officer. The victim said defendant had come to the trailer and pounded on the door. When she looked outside, he walked away. She went outside to investigate with a telephone in her hand and the defendant approached her. Defendant told her, "I'm *291 gonna fuck you up." She ran to the gated trailer park's clubhouse, but defendant followed her, until she told him that she was calling the police. At that point, he disappeared from her sight. After the officer finished speaking with the victim, which took 40 minutes, he checked the trailer park and its perimeter but did not find defendant.
Defendant here contends that the evidence did not support the trial court's finding that the victim's statements constituted a spontaneous declaration because they were made after "the incident ... had passed" and after he had left the area.[2] Of course, many spontaneous declarations are not made contemporaneously with the event. That is why the requirement exists that the nervous excitement of the event must still dominate at the time the declaration is being made. Defendant cites no authority and presents no persuasive argument that the fact that the statements were made after the event and possibly[3] after he had left the area means that the evidence did not support the trial court's conclusion.
The first prior act occurred in 1993. A police officer testified at a section 402 hearing that on July 12 at 11:20 p.m. he was called to the home shared by the victim and defendant to investigate domestic violence. The victim was very emotionally distraught, upset and traumatized. There was redness on the right side of her face and she complained of pain on the left side of her head. Without being questioned, and immediately upon the officer's arrival, the victim said that when she tried to get defendant to leave, the latter told her if she tried to force him to go, he'd kill her. This scared her. She also said that she then tried to get defendant to leave by shoving him, and he slapped her in the face and kicked her in the stomach while she was on the floor. The victim said this had occurred just before she had called the police. Defendant was still present while the officer was there. Defendant here repeats the argument he made in connection with the incident already discussed, i.e., that because the victim's statements were not made during the event, they cannot be spontaneous declarations. We have already rejected this argument.
The second prior act occurred on September 6, 1993, around 3:30 p.m. The officer who was dispatched testified at a section 402 hearing that the victim was upset, distraught, scared and concerned. The victim said defendant had come to her home with a jewelry box he had stolen from her. The victim's older son (9 or 10 years of age) let defendant in. The victim was in the bedroom. Defendant and the victim yelled back and forth at each other because defendant wanted the victim to drop the charges against him involving the jewelry box and she refused. Defendant entered the victim's bedroom. She tried to get away from him. He grabbed her foot, and they both fell onto her bed. He strangled her and got on top of her chest while she was on the bed. She yelled to her son to call the police. Defendant told her to shut up or he'd kill her. He hit her in the Up. He said, "Don't think I won't kill you, right here, right now." This scared her. He demanded she write a letter saying he could come to her apartment any time he wanted. She refused. Defendant said he'd kill her before he'd go *292 to jail. He left. These events happened immediately prior to the officer arriving. The officer noticed red marks the size of fingers on the victim's neck. Defendant here contends that because he had left and the incident was over at the time the victim made the statements, they were not spontaneous declarations. We have already rejected his argument.
The third prior act occurred on March 20, 1997. The officer who was dispatched testified at a section 402 hearing that at the time, the victim and defendant were estranged and not cohabitating. The dispatch occurred at 8:56 p.m. and the officer arrived at the victim's home about 9:15 p.m. The victim was very fearful, shaking and scared. She said that she had called the police within minutes of hearing defendant tap on her locked bedroom window at her apartment. She asked defendant what he was doing there. Defendant walked away from her bedroom window with a screwdriver in his hand. He then went to her locked front door. He jiggled the deadbolt lock. She feared for her life, so she got the couple's five-year-old son out of bed. Defendant tried to force entry through another locked window. The victim ran out the front door with her son in her arms to a neighbor's apartment, where she banged on the door. She told the neighbor to call the police. The officer saw a broken-off key in the deadbolt lock that the victim said had not been there before defendant arrived. The victim said defendant did not have permission to put a key into the lock. The screens had been removed from both of the windows defendant had had contact with and there were fresh pry marks on both windows, consistent with attempts to open both forcibly.
Defendant here reasserts the point he made previously, i.e., that the fact that the victim made the statements after the incident ended and after she had "left the area" (to go to the neighbor's to call the police), the statements cannot have been spontaneous declarations. Again, we reject this argument for reasons already stated.
The final prior act at issue occurred four days after the one just discussed. An officer saw defendant and the victim in a parked car. Defendant had his hands around the victim's neck and she was moving from side to side. The victim screamed for help. Defendant ran away with an object in his hand. The officer chased him but was unable to catch him. One to two minutes later, the officer returned to the victim, who was shaking and crying. The victim said defendant had gotten into her car and put a knife to her stomach. He grabbed her by the hair and said, several times, "Drive, bitch." She refused. He put the knife to her neck and pushed it, saying, "Don't think I won't, bitch." She saw the police officer's car, and defendant ran off. She was both then, and when the officer spoke to her, in fear for her life. The officer found a pocket knife 30 feet away from the car in the path defendant had taken when he ran from the car. The victim said she and defendant had not dated for four years, but she had allowed him to visit with their son. The officer saw a cut to the front of the victim's neck which the victim said had been caused by defendant pushing his knife into her throat.
Defendant repeats the argument he previously made, and we rejected, in connection with his assertion that these statements did not constitute a spontaneous declaration.

b. Whether Their Admission Violated Defendant's Right to Confrontation

In Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, *293 the United States Supreme Court held that the right to confrontation requires that testimonial statements not be admitted at trial unless the declarant is unavailable and has been subject to cross-examination. We will assume for purposes of this discussion that all six statements were testimonial.
Crawford also recognized, as an example of what it called an exception to the confrontation clause, the rule of forfeiture by wrongdoing, which renders the clause unavailable to one who procures the victim's absence at trial. Defendant asserts that the trial court here erred in concluding that by killing the victim, he forfeited his confrontation right concerning her statements, regardless of the lack of evidence that he killed her at least in part to silence her.[4] He contends that under the circumstances, he may rely on his right to confront her unless he waived it, i.e., he intentionally relinquished it by intending to silence the victim when he killed her.
As noted by Justice Scalia in his concurrence in Freytag v. C.I.R. (1991) 501 U.S. 868, 894, footnote 2, 111 S.Ct. 2631, 115 L.Ed.2d 764, waiver and forfeiture "are really not the same, although our cases have so often used them interchangeably that it may be too late to introduce precision. Waiver, the `intentional relinquishment or abandonment of a known right or privilege,' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023[, 82 L.Ed. 1461] ... is merely one means by which a forfeiture may occur. Some rights may be forfeited by means short of waiver,[5] ... [including the] right to confront adverse witnesses ... but others may not...." (Id at p. 894, fn. 2, 111 S.Ct. 2631 (cone, opn. of Scalia, J.).) In contrast to waiver, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." (United States v. Goldberg (3rd Cir.1995) 67 F.3d 1092, 1100; accord, United States v. Olano (1993) 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508.)
We begin with the origin of the rule of forfeiture by wrongdoing, as recognized by Crawford.
In Reynolds v. United States (1879) 98 U.S. 145, 158, 159, 25 L.Ed. 244, the court held, "The Constitution gives the accused the right to a trial, at which he should be confronted with the witnesses against him: but if a witness is absent by [the accused's] wrongful procurement, [the accused] cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guaranty an accused ... against the legitimate consequences of his own wrongful acts. [I]f he voluntarily keeps the witness away, he cannot insist on his privilege [of being confronted with the witnesses against him].... [¶] The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong...." It is worthy of note that not once did the Reynolds court refer to the consequences of a defendant causing the absence of a witness as a waiver of the defendant's right to confront that witness.
Utilizing the concept of forfeiture, rather than waiver, for wrongdoing was the next case in which the United States Supreme Court applied the Reynolds rationale, *294 Eureka Lalce & Yuba Canal Co. v. Superior Court of Yuba County (1886) 116 U.S. 410, 6 S.Ct. 429, 29 L.Ed. 671. Therein, the Supreme Court held that the avoidance of service of process by a corporation's agents put the corporation in the position where "it cannot justly complain if service on its attorney is made the equivalent of that which its agents by their wrongful acts have made impossible. [T]he privilege [of proper service of process] cannot be insisted on." (Id at p. 418, 6 S.Ct. 429.) As before, the notion of waiver was not mentioned.
Reynolds was next referenced by the Supreme Court in West v. Louisiana (1904) 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965, disapproved on other grounds in Pointer v. Texas (1965) 380 U.S. 400, 406, 85 S.Ct. 1065,13 L.Ed.2d 923, wherein the court said of its, earlier decision, if the defendant failed "to show ... that he was not instrumental in concealing or keeping the witness away [from trial] he was in no condition to assert his constitutional right to be confronted with the witness." (Id at p. 265, 24 S.Ct. 650.) The West court referred to the inability of a defendant who keeps a witness away from trial to rely on his right to confront that witness an "exception[] to the general rule prescribed in the Constitution." (Id, at p. 267, 24 S.Ct. 650.) It did not mention waiver.
However, it did in Diaz v. United States (1912) 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. Therein, the defendant offered into evidence former testimony and out-of-court statements. The court held, "[T]he [evidence] could not have been admitted without the consent of the accused ... because [he] was entitled to meet the witnesses face to face. [Citation.] [T]he right of confrontation ... is in the nature of a privilege extended to the accused, ... and that he is free to assert ... or to waive...." (Id at pp. 450-451, 32 S.Ct. 250.) The court went on to say, "The view that this right may be waived also was recognized by this court in Reynolds ...." (Id at p. 452, 32 S.Ct. 250, italics added.)
Finally, in Brookhart v. Janis (1966) 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 the Supreme Court held, "[U]nless [the defendant] did actually waive his right to be confronted with and to cross-examine [the] ... witnesses, his federally guaranteed constitutional rights have been denied .... [¶] [F]or a waiver [of constitutional rights] to be effective it must be clearly established that there was `an intentional relinquishment ... of a known right ....'" (Id, at p. 4, 86 S.Ct. 1245.) In Brookhart, defense counsel had agreed to the "practical equivalent of a plea of guilty" (id. at p. 7, 86 S.Ct. 1245) in the face of his client's insistence that he was not pleading guilty.
Other United States Supreme Court cases have been interpreted to deal with the right of confrontation, and have been relied upon in lesser federal court opinions discussed later in this opinion. In Snyder v. Massachusetts (1934) 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674, the court noted that the right of the defendant to be present at trial "may be lost by consent or ... misconduct" and it dealt with the "extension [of the right] when unmodified by waiver, either actual or imputed." (Id at p. 106, 54 S.Ct. 330.)[6] The waiver concept *295 in the context of a defendant's right to be present at trial was taken a step further in Illinois v. Allen. Therein, the court held, "Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, [citation], we explicitly hold ... that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner ... that his trial cannot be carried on with him in the courtroom." (Illinois v. Allen, supra, 397 U.S. at p. 343, 90 S.Ct. 1057.) However, the court concluded three years later in Taylor v. United States (1973) 414 U.S. 17, 19, 94 S.Ct. 194, 38 L.Ed.2d 174 that a defendant's "`intentional relinquishment ... of [his] known right'" (id. at p. 20, 94 S.Ct. 194) to be present at trial did not require a demonstration that "he knew or had been expressly warned by the trial court ... that he had a right to be present [and] that the trial could continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him" (id. at p. 20, 94 S.Ct. 194) because these matters could be inferred.
Because the parties rely heavily on federal case law in addressing the issue before us (as there is no California statutory or case law), it is important to trace what happened to these concepts and their labels when the lesser federal courts got a hold of them. Of the federal district or Court of Appeals cases cited by the parties here, or cited by those cases, the first is United States v. Mayes (6th Cir.1975) 512 F.2nd 637, wherein the defendant's attorney had procured the witness's silence by invoking the latter's Fifth Amendment right on his behalf and had otherwise prevented the prosecution from questioning him. In response to the defendant's complaint that the witness's invocation of his privilege interfered with his right to confront the witness, the Sixth Circuit held, "The unfairness which amounts to a denial of the right of confrontation is the frustration of the accused's right to face his accuser and challenge the truth of the accusation. [Citation.] The unfairness disappears when the accused deliberately brings about that denial in furtherance of his own interests. [¶] ... [¶] He cannot now be heard to complain that he was denied the right of cross-examination and confrontation when he himself was the instrument of the denial." (Mayes at pp. 650-651.)
The next case, United States v. Carlson, supra, 547 F.2nd 1346,[7] begins the string of references by the lesser federal court cases to the notion of waiver in the context of the right to confrontation. Relying on Brookhart v. Janis, discussed above, the court noted that the right can be waived, and such waiver must be an intentional relinquishment of a known right. (Carlson, at pp. 1357-1358.) The court added, concerning the defendant's intimidation of *296 a witness which resulted in the latter not testifying, "Carlson did not explicitly manifest his consent to a waiver of his confrontation rights. [¶] [T]he right of confrontation may be lost not only by consent, but `at times even by misconduct' [I]f the witness's refusal to testify was procured by the accused, no confrontation rights are denied. [¶] `A defendant who murders a witness ought not be permitted to invoke the right of confrontation to prohibit the use of his accusation.' [Citation.] Similarly, a defendant should not be afforded the protection of the confrontation clause if he achieves his objective of silencing a witness by less drastic, but equally effective, means." (Carlson, at pp. 1358-1359.) In support, the court cited Mayes and Reynolds, noting that the latter articulated the precept that no one shall be permitted to take advantage of his own wrong. (Id at p. 1359 and fn. 12.) Despite it's insistence that waiver must be an intentional relinquishment of a known right, the court held, "The fact that Carlson was not explicitly advised of his right of confrontation preceding this waiver is of no moment since the controlling issue is whether the waiver was voluntary." (Id. at p. 1360.)
United States v. Balano (10th Cir.1979) 618 F.2nd 624, 626, held that absent a waiver, the grand jury testimony of a witness who had been intimidated by the defendant could not be admitted. The court held that threats by the defendant on the witness's life could constitute such a waiver, citing "the common law principle that one should not profit by his own wrong[.]" (Id at p. 629.)
The next case was the first one dealing with a dead witness. United States v. Thevis (5th Cir.1982) 665 F.2nd 616 took the waiver requirement to a new, never before heard of level in what it noted was the first case in its circuit to address the issue. (Id. at p. 627.) Citing no authority whatsoever, the court held its duty was to determine, "[W]hether a defendant's murder of a witness for the purpose of preventing his testifying at trial constitutes a valid waiver.... [¶] ... [¶] We conclude that a defendant who causes a witness to be unavailable for trial for the purpose of preventing that witness from testifying ... waives his right to confrontation under the Zerbst standard. A defendant who undertakes this conduct realizes that the witness is no longer available and cannot be cross-examined. Hence in such a situation the defendant has intelligently and knowingly waived his confrontation rights." (Thevis, at p. 630.) In support of this holding, the court cited the language in Carlson that allowing a defendant to benefit from murdering a witness would be contrary to public policy, common sense and the underlying purpose of the confrontation clause. (Ibid)
Not embracing this requirement, the same court that decided Mayes held that all that was required to avoid the consequences of application of the defendant's right to confront was a showing that he had intimidated the witness not to testify and nothing more. (Rice v. Marshall (6th Cir.1983) 709 F.2nd 1100, 1102.) Notably, the Sixth Circuit categorized this as an exception to the confrontation clause and cited Reynolds as recognizing this "exception." (Rice, at pp. 1102-1103.)
The same year, the Sixth Circuit addressed the difference between waiver of a right, in the Johnson v. Zerbst sense, and forfeiture of the right to complain about the absence of that right in the context of witness intimidation in Steele v. Taylor (6th Cir.1982) 684 F.2d 1193. Therein, the court noted, "Employing either a concept of implicit waiver or the principle that a person should not profit by his own wrong, ... courts have ... relaxed the hearsay rule when the defendant wrongfully causes *297 the witness's unavailability." (Id at p. 1201.) Relying on Reynolds, Thevis, Balano, Carlson and Mayes, the court held the rule that a "prior statement given by a witness made unavailable by the wrongful conduct of a party is admissible against the party if the statement would have been admissible had the witness testified ... is based on a public policy protecting the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of an adverse witness. The rule is also based on a principle of reciprocity similar to the equitable doctrine of `clean hands.'... A defendant cannot prefer the law's preference ... [for live testimony over hearsay] and profit from it, as the Supreme Court said in Reynolds, while repudiating that preference by creating the condition that prevents it." (Steele, at p. 1202.) More importantly, the Steele court added, "It should be noted that the Vaiver' concept is not applicable, strictly speaking, to [the defendant procuring a witness's absence] and its use is somewhat confusing. It is a legal fiction to say that a person who interferes with a witness thereby knowingly, intelligently and deliberately relinquishes his right to exclude hearsay. He simply does a wrongful act that has legal consequences that he may or may not foresee. The connection between the defendant's conduct and its legal consequence under the confrontation clause is supplied by the law and not by a purposeful decision by the defendant to forego a known constitutional right." (Id. at p. 1201, fn. 8, italics added.)
The same year, the Second Circuit began its contribution to the case law in United States v. Mastrangelo (2nd Cir. 1982) 693 F.2nd 269. Therein, the court held that if the defendant killed the witness, he waived his confrontation right. (Id at p. 272.) The court cited Reynolds and the U.S. Supreme Court cases dealing with the right to be present at trial (discussed above), along with Mayes, Balano, Carlson and Thevis for the proposition that a defendant may not take advantage of his own wrong. (Mastrangelo, at p. 273.) The court called this "waiver by misconduct." In 1984 and 1992, the court reiterated its adherence to this approach in two witness intimidation cases. (United States v. Potamitis (2nd Cir.1984) 739 F.2nd 784; United States v. Aguiar (2nd Cir.1992) 975 F.2nd 45.)
The Eleventh Circuit weighed in on the matter in 1985, holding in United States v. Rouco (11th Cir.1985) 765 F.2nd 983, 995, that the defendant waived his right to confront a witness by killing him. It cited Carlson for the proposition that "`[t]he Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery.'" (Rouco, at p. 995.)
In 1993, the District Court of the District of Columbia noted in United States v. White (D.D.C.1993) 838 F.Supp. 618, that the Reynolds rule that a defendant cannot assert his confrontation right if he has procured the witness's absence "has been applied by the courts in Aguiar, Potamitis, Steele, Thevis, Balano, and Carlson." (White, at p. 620 and fn. 3.) It held that if the defendant was responsible for the absence of the murdered victim, he "will be deemed to have waived his confrontation rights...." (Id. at p. 621.)
Despite deciding three cases in which a confrontation claim was defeated merely by showing that the defendant secured the witness's absence, in 1994, the Second Circuit somewhat took matters one step further by noting that evidence had been adduced showing that the purpose in murdering the witness was to prevent his testimony. (United States v. Thai (2nd Cir. 1994) 29 F.3d 785, 815.) However, the *298 court's fire-Thai approach returned in 1997 when in United States v. Miller (2nd Cir. 1997) 116 F.3d 641, 668, it held, "[A] `finding that [defendant's purpose was to prevent [a declarant from] testifying'... is not required. The relevant issue is the [defendant's participation in [the deceased witness's] murder."
Apparently in agreement with Thai is the next case, United States v. Houlihan (D.Mass.1995) 887 F.Supp. 352, upon which defendant here heavily relies. The court held, "A waiver of a constitutional right is ordinarily valid only where there is `an intentional rehnquishment ... of a known right ...' [citing Zerbst]. The United States Supreme Court has long recognized, however, that the Sixth Amendment right of a ... defendant to confront the witnesses against him can be waived not only by consent, but also by the defendant's misconduct.[8] [Citing Snyder, Allen and Reynolds.]" (Id. at p. 357.) Asserting that this case was the first opportunity for the First Circuit to voice its opinion on the matter (id at p. 358), the court began with the premise that it must determine whether the defendant had waived his right of confrontation when he murdered a witness to prevent him from testifying. Houlihan went on to observe, "Whenever a murderer kills a person who has knowledge of the murderer's other crimes, the murderer reaps the collateral benefit of preventing the victim from testifying at a later trial. [N]one of the cases that have permitted the use of the waiver doctrine to admit hearsay testimony have gone so far as to allow the admission of [statements by a murdered witness concerning other crimes committed by the defendant solely] on this basis alone. Thus, the fact that a murder victim is not able to testify at trial is insufficient to invoke the waiver doctrine absent some showing that the victim was in fact cooperating with law enforcement authorities and was likely to have testified at trial and that these facts provided a motive for the murder." (Id. at pp. 360-361.) Houlihan's premise is incorrect regardless of how it is interpreted. If it meant that in no case to date where a witness had been murdered had the court required more than a showing that the defendant participated in the killing, it is incorrect. (United States v. Mastrangelo, supra, 693 F.2d at pp. 272, 273; United States v. White, supra, 838 F.Supp. at pp. 621, 623; United States v. Rouco, supra, 765 F.2d at p. 995.) If it meant that in no case to date had the court required more than that showing, it ignores the majority of witness intimidation cases. (United States v. Aguiar, supra, 975 F.2nd at p. 47; United States v. Potamitis, supra, 739 F.2d at p. 788; Rice v. Marshall, supra, 709 F.2d at p. 1102; Mastrangelo, at pp. 269, 272-273; United States v. Balano, supra, 618 F.2nd at pp. 628-629; United States v. Carlson, supra, 547 F.2nd at pp. 1359-1360; United States v. Mayes, supra, 512 F.2d at pp. 650-651.) Despite our disagreement with the Houlihan court's requirements for the admission of a murdered witness's hearsay statements, it did recognize the difference between the concept of a defendant's waiver of his right to confrontation and the courts not permitting a defendant to profit from his wrongdoing by keeping a witness from testifying. (Houlihan, at p. 358, fn. 10.)
A year after the District Court's opinion in Houlihan, the Federal Court of Appeals offered its version of it in what the latter court said was its first opportunity to address the issue. (United States v. Houlihan *299 (1st Cir.1996) 92 F.3d 1271 at pp. 1271, 1277.) Therein the court dealt with a much narrower issue than the one the district court addressed. The issue was "whether a defendant waives his rights under the Confrontation Clause by murdering a potential witness to prevent that witness from turning state's evidence and/or testifying against him at trial." (Id. at pp. 1278-1279, italics added.) The court also said, "While a waiver of the right to confront witnesses typically is express [(such as when a defendant pleads guilty)], the law is settled that a defendant may also waive it through his intentional misconduct [(i.e., through absence or disruptive behavior)]. [¶] By the same token, courts will not suffer a party to profit from his own wrongdoing. Thus, a defendant who wrongfully procures a witness's absence for the purpose of denying the government that witness's testimony waives his right under the Confrontation Clause to object .... (citing Reynolds, Steele, Balano and Carlson)." (Id. at p. 1279.) The Houlihan court agreed with the Second Circuit's label for this doctrine as "waiver by misconduct." (Ibid.)
The following year, the District of Columbia Circuit said of this issue, the defendant may lose "the right of confrontation ... through misconduct.... It is hard to imagine a form of misconduct more extreme than the murder of a potential witness. Simple equity supports a forfeiture principle, as does a common sense attention to the need for fit incentives. [A] defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness. [Citing Aguiar, Rouco, Thevis, Balano and Carlson.] [¶] ... [¶] The forfeiture principle ... is designed to prevent a defendant from thwarting the normal operation of the criminal justice system." (United States v. White (D.C.Cir. 1997) 116 F.3d 903, 911-912.) Gone was the reliance, which the district court made in its earlier version of the case, discussed above, on the doctrine of waiver.
Forfeiture, rather than waiver, was the operative word also used by the same Circuit that decided Carlson and the Fourth Circuit in the context of a witness who was killed by the defendant. (United States v. Emery (8th Cir.1999) 186 F.3d 921, 926;[9]United States v. Gray (4th Cir.2005) 405 F.3d 227, 240, 242 [calling it "forfeiture by wrongdoing"].) The latter was, no doubt, in response to the language in Crawford v. Washington, supra, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 about the rule of forfeiture by wrongdoing.
In a case remarkably similar to ours in its facts, the Sixth Circuit, the author of Mayes, Rice v. Marshall and Steele v. *300 Taylor[10] said in United States v. Garcia-Meza (6th Cir.2005) 403 F.3d 364, "The Defendant ... argues that for the rule of forfeiture to apply, a defendant must have killed or otherwise prevented the witness from testifying with the specific intent to prevent her from testifying. Since he did not kill [the domestic violence victim] with the specific intent to prevent her from testifying, ... he should not be found to have forfeited his right to confront her. There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his light to confront the witness where, in procuring [her] unavailability, he intended to prevent the witness from testifying. Though the Federal Rules of Evidence may contain such a requirement,[11] ... the right secured by the Sixth Amendment does not depend on, in the recent words of the Supreme Court, `the vagaries of the Rules of Evidence.' [Citation.] The Supreme Court's recent affirmation of the `essentially equitable grounds' for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit." (Id. at pp. 370-371, italics added; accord, United States v. Mayhew (S.D.Ohio 2005) 380 F.Supp.2d 961, 966.)
Finally, the District Court of New York, in a post-Crawford case, said, "[The defendant] forfeited his Confrontation Clause rights by tampering with [someone who had identified him at a line-up]," citing Reynolds. (United States v. Basciano (E.D.N.Y.2006) 430 F.Supp.2d 87, 90.) The court required no more than a showing that the defendant tampered with the potential witness, and as a result, the latter was unavailable. (Ibid)
Of course, we are bound by none of these federal decisions. (People v. Crittenden (1994) 9 Cal.4th 83, 120, fn. 3, 36 Cal.Rptr.2d 474, 885 P.2d 887.) However, we distill the following from a comprehensive tracking of them through time: Despite the obvious differences between the notion of waiver and the rule of forfeiture by wrongdoing (or an exception to the confrontation right) and the requirements of each, many of the federal courts treat them as though they are interchangeable, citing cases that have used one to justify the use of the other.[12] This is inappropriate and has created a great deal of confusion. That said, there is a clear trend in the federal decisions of late away from the concept of waiver and towards the rule of forfeiture and its root in Reynolds and principles of equity, which, as Garcia-Meza explained, is not dependent on the defendant's intent.[13] In fact, amongst the cases we have discussed, only three adhere to the notion that the defendant must intend *301 to keep the witness from testifying for an exception to the defendants confrontation right to be established, and one of those decisions was somewhat trumped by that court's higher body. While we need not conclude that application of the concept of waiver in this area is incorrect, we do conclude that it is not necessary. The rule of forfeiture by wrongdoing, declared by the Supreme Court to be alive and well in Crawford, and even more recently, as discussed below, operates regardless of the defendant's intent because it is based on the equitable principle prohibiting a defendant from benefiting from wrongdoing. In this regard, we are persuaded by the words of Steele v. Taylor italicized, ante, and the holding of Garcia-Meza.
We are bolstered in this view by the following from Carlson, "`The question is one of broad public policy, whether an accused ... can with impunity defy the processes of th[e] law....' ... To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause.... `[J]ustice, though due to accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.'" (United States v. Carlson, supra, 547 F.2d at pp. 1359-1360.)
Our view is entirely consistent with a recent California Supreme Court case dealing with a right equal in its importance to the confrontation clause, i.e., the right of a defendant to self-representation. In People v. Carson (2005) 35 Cal.4th 1, 9-11, 23 Cal.Rptr.3d 482, 104 P.3d 837, the court held, "One form of serious and obstructionist misconduct is witness intimidation, which by its very nature compromises the factfinding process and constitutes a quintessential `subversion of the core concept of a trial' [Citation.] ... When a defendant exploits or manipulates his in propria persona status to engage in [threatening or intimidating witnesses] the trial court does not abuse its discretion in determining he ha[d] forfeited the right of continued self-representation. [¶] ... [¶] [W]e do not hold that an intent to disrupt is a necessary condition. [T]he relevance inheres in the effect of the misconduct on the trial proceedings, not the defendant's purpose."
We find further support in the latest Crawford case, Dams v. Washington (2006) ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224. Therein, the Supreme Court fleshed out the meaning of testimonial evidence, to which the right to confrontation applied, and included within its ambit a victim's statements to a police officer responding to a report of domestic violence. In response to Amici concerned that the court's holding would make domestic violence cases in which the victims are unwilling to testify more difficult to prosecute, the court reiterated its adherence to the rule of forfeiture by wrongdoing established by Reynolds, commenting, "[D]efendants have ... the duty to refrain from acting in ways that destroy the integrity of the criminal trial system. [O]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." (Id at pp. 2279-2280.)
If, under the rule of forfeiture by wrongdoing, a defendant in a domestic violence case can be prohibited from invoking his or her confrontation right to exclude the hearsay statements of the victim when the defendant has persuaded that victim not to attend trial, we would be rewarding those defendants who manage to kill the victim by not applying the same rule to them. Imposing a requirement that the defendant, in murdering the victim, intended to prevent the victim's statements from being *302 admitted at an eventual trial would effectively eliminate the use of victim statements in most domestic violence homicide cases. Few defendants are capable of such far-reaching thinking at the moment they kill their victims.

2. Admission of Evidence of Other Acts[**]

II

DISPOSITION
The trial court is directed to amend the abstract of judgment to show that defendant's convictions resulted from a jury trial, not a court trial, as the abstract currently states. In all other respects, the judgment is affirmed.
McKINSTER and RICHLI, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 1.2.
[1] This assertion is not supported by the record. The officer testified he could not recall whether he even looked for defendant.
[2] As before, the record does not support this assertion. The fact that he disappeared from the victim's sight as she made her way to the clubhouse to call the police and was not spotted by the officer 40 minutes after the latter arrived did not establish that defendant had left the area before the victim made her statements to the officer.
[3] See footnote 2, ante.
[4] As the parties recognize, this issue is currently pending before the California Supreme Court in, inter alia, People v. Giles, review granted December 22, 2004, S129852.
[5] Justice Scalia offered other examples besides the right to confront adverse witnesses, i.e., the right to a public trial and the right against double jeopardy. (Freytag v. C.I.R., supra, 501 U.S. at p. 894, fn. 2, 111 S.Ct. 2631.)
[6] In Illinois v. Allen (1970) 397 U.S. 337, 341, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 the court noted that Snyder held that the right to confrontation may be lost by consent or misconduct. Although an initial reading of this portion of Snyder leads one to conclude that this is precisely what the court was saying, upon closer examination, it is obvious the Snyder court was referring to the right to be present, which was the right whose extension it went on to discuss. It is worthy of note that later in the Snyder opinion, the court interspersed a couple of references to the right to confront with references to the right to be present, almost as though the two were interchangeable. (Id. at p. 121, 54 S.Ct. 330.) A number of lesser federal court cases discussed in this opinion cite Snyder as authority for the proposition that the right to confrontation may be lost by consent or misconduct. (See, e.g., United States v. Carlson (8th Cir.1976) 547 F.2nd 1346, 1358.).
[7] Therein, the court noted that the issue of whether a defendant's intimidation of a witness waived the defendant's confrontation right "apparently has not been directly considered by a federal court or, so far as we have been able to ascertain, by any state court." (United States v. Carlson, supra, 547 F.2nd 1346, 1358.)
[8] This appears to us to imply that waiver by misconduct is not subject to the Zerbst standard.
[9] The court noted that rule 804(b)(6) of the Federal Rules of Evidence (28 U.S.C.) provided for the forfeiture of the right to confrontation where "a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." (United States v. Emery (8th Cir.1999) 186 F.3d at p. 926.) That provision became law in 1997. (United States v. Gray (4th Cir.2005) 405 F.3d 227, 241; see United States v. Johnson (4th Cir.2000) 219 F.3d 349 for application of the rule.)

In dicta in People v. Pantoja (2004) 122 Cal.App.4th 1, 10, fn. 2, 18 Cal.Rptr.3d 492, the First District erroneously concluded that the doctrine of forfeiture by wrongdoing could not be applied unless the requirements of Federal Rules Of Evidence 804(b)(6), including the intent to prevent the witness from testifying, had been met. As has been seen from our extensive tracing of the development of the law prohibiting wrongdoers from invoking the right to confrontation, rule 804(b)(6) of the Federal Rules of Evidence (28 U.S.C), while presenting one view of that law, does not reflect all.
[10] In United States v. Cromer (6th Cir.2004) 389 F.3d 662, 679, a post-Crawford case, the Sixth Circuit commented, "If ... the witness is only unavailable to testify because the defendant has killed ... her, then the defendant has forfeited his right to confront that witness."
[11] See footnote 9, ante.
[12] "A fertile source of perversion in constitutional theory is the tyranny of labels." (Snyder v. Massachusetts, supra, 291 U.S., at p. 114, 54 S.Ct. 330.)
[13] Agreeing are state courts in post-Crawford cases. (State v. Meeks (2004) 277 Kan. 609, 88 P.3d 789, 794; People v. Moore (Colo.App. 2004) 117 P.3d 1; Gonzalez v. State of Texas (Tex.App.-San Antonio 2004) 155 S.W.3d 603, 609, 610, 611.)
[**] See footnote *, ante.